IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LIPOCINE INC,

                            Plaintiff,

        v.                                          C. A. No. _____

CLARUS THERAPEUTICS, INC,                          **JURY TRIAL DEMANDED**

                            Defendant.

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Lipocine Inc. ("Plaintiff" or "Lipocine"), by its undersigned attorneys brings this action against Defendant Clarus Therapeutics, Inc. ("Defendant" or "Clarus"), and hereby alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for infringement of United States Patent Nos. 9,034,858 (the "'858 patent"); 9,205,057 (the "'057 patent"); 9,480,690 (the "'690 patent"); 9,757,390 (the "'390 patent"); 6,569,463 (the "'463 patent"); and 6,923,988 (the "'988 patent") (collectively, the "Asserted Patents") under the Patent Laws of the United States, 35 U.S.C. §§ 100 *et seq.*, including §§ 271(a)-(c), and for a declaratory judgment of infringement of the Asserted Patents under 28 U.S.C. §§ 2201 and 2202 and 35 U.S.C. § 271, arising from Clarus' intent to market and sell JATENZO®, an oral testosterone pharmaceutical product, for use in testosterone therapy treatments, prior to the expiration of the Asserted Patents, which are owned by Lipocine.  A true and accurate copy of the '858 patent is attached as Exhibit A.  A true and accurate copy of the '057 patent is attached as Exhibit B.  A true and correct copy of the '690 patent is attached as Exhibit C.  A true and correct copy of the '390 patent is attached as Exhibit D.  A true and correct copy of

the '463 patent is attached as Exhibit E.  A true and correct copy of the '988 patent is attached as Exhibit F.

## THE PARTIES

2.      Plaintiff Lipocine Inc. is a company organized and existing under the laws of the State of Delaware, with a principal place of business at 675 Arapeen Drive, Suite 202, Salt Lake City, Utah 84108.

3.      Lipocine is in the business of, *inter alia*, developing pharmaceutical products for oral delivery, including pharmaceutical products containing testosterone esters, *i.e.*, testosterone undecanoate.

4.      Upon information and belief, Defendant Clarus Therapeutics, Inc. is a company organized and existing under the laws of the State of Delaware, with a principal place of business at 555 Skokie Boulevard, Suite 340, Northbrook, Illinois 60062.

5.      Upon information and belief, Clarus is a specialty pharmaceutical company in the business of, among other activities, developing pharmaceutical products containing testosterone esters such as testosterone undecanoate, for oral delivery.  Upon further information and belief, Clarus is specifically developing and preparing the commercial launch of a testosterone undecanoate formulation under the brand name JATENZO®.

6.      Lipocine and Clarus are direct competitors.  Lipocine and, upon information and belief, Clarus, are both in the business of developing pharmaceutical products containing testosterone esters for oral delivery, and each has filed a New Drug Application ("NDA") with the United States Food and Drug Administration ("FDA") seeking approval of an oral-delivery pharmaceutical product containing a testosterone ester, *i.e.*, testosterone undecanoate.

7.     On information and belief, Clarus' NDA was approved by the FDA on March 27, 2019.  (Ex. G (2019-03-27 Clarus Press Release).)  Clarus has announced its intention to launch its NDA product at the end of 2019.  (*See id.*)

## JURISDICTION AND VENUE

8.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq*., including §§ 271(a), 271(b), 271(c), and 28 U.S.C. §§ 2201 and 2202.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), 2201, and 2202.

9.     This Court has personal jurisdiction over both Lipocine and Clarus as both are Delaware organizations, organized and incorporated under the laws of Delaware.  Clarus, by virtue of, *inter alia*, its status as a Delaware corporation, having availed itself of the rights and benefits of Delaware law, should reasonably anticipate being haled into court in this judicial district.

10.     Upon information and belief, this Court has personal jurisdiction over Clarus, under Delaware's long-arm statute, Del. Code Ann. tit. 10 § 3104, because Clarus intends to market and sell its oral testosterone undecanoate formulation, now approved by the FDA, to residents throughout the United States, including in this judicial district.  On information and belief, Clarus has established, and will continue to maintain, minimum contacts with this forum such that the exercise of jurisdiction over Clarus would not offend traditional notions of fair play and substantial justice.

11.     Further, this Court has personal jurisdiction over Clarus as it has affirmatively availed itself of the jurisdiction of this Court by filing claims in this district.  *See, e.g., Clarus Therapeutics, Inc. v. Lipocine Inc.*, 1:15-cv-01004-RGA (D. Del.).

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and § 1400(b).

13.     The Court has jurisdiction to adjudicate this action under the Declaratory Judgement Act, 28 U.S.C. §§ 2201-02.  An actual, substantial, and justiciable controversy exists between Plaintiff and Clarus of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests with respect to the Asserted Patents.

## FACTUAL BACKGROUND

### The Patents-in-Suit

14.     The '858 patent entitled "High-Strength Testosterone Undecanoate Compositions," issued on May 19, 2015 and names Chandrashekar Giliyar, Basawaraj Chickmath, Chidambaram Nachiappan, Mahesh V. Patel, and Srinivansan Venkateshwaran as inventors.

15.     The '858 patent is generally directed to methods for providing a serum concentration of testosterone within a steady state target serum testosterone concentration $C_{ave}$ range for a hypogonadal male subject having testosterone deficiency.  The methods disclosed in the '858 patent accomplish this, for example, through oral administration of an initial regimen of a testosterone undecanoate composition twice a day, with a meal, where the testosterone undecanoate composition comprises a particular weight percentage, about 14 wt % to about 35 wt % of testosterone undecanoate, and a particular daily dose, about 360 mg to about 480 mg of testosterone undecanoate; determination of a dose titration metric based on measured serum testosterone levels assessed 1 to 8 hours after a single dose of the testosterone undecanoate composition at steady state; and then oral administration of a maintenance regimen of a testosterone undecanoate composition twice a day, with a meal, where the testosterone undecanoate comprises a particular weight percentage, about 14 wt % to about 35 wt %, and provides a daily dose of testosterone undecanoate within ± 40% of the amount of the testosterone

undecanoate of the initial regimen to achieve a serum testosterone concentration within a target range.  The composition used in this method provides upon single dose administration a ratio of serum testosterone $C_{max}$ to $C_{ave}$ of 2.7 or less or provides a dose-normalized serum testosterone $C_{ave}$ of about $1.9 \times 10^{-6}$ $dL^{-1}$ or higher.

16.     Claim 1 of the '858 patent is exemplary and recites:

1. A method for providing a serum concentration of testosterone within a steady state target serum testosterone concentration $C_{ave}$ range for a hypogonadal male subject having testosterone deficiency, comprising the steps of,

1) orally administering to the male subject twice a day with a meal an initial regimen including a daily dose of a testosterone undecanoate-containing composition, wherein the testosterone undecanoate comprises about 14 wt % to about 35 wt % of the testosterone undecanoate-containing composition and wherein the daily dose provides about 360 mg to about 480 mg of testosterone undecanoate to the male subject;

2) determining a dose titration metric based on a measurement of serum testosterone concentration for the male subject on at least one titration node day within the initial regimen said measurement of serum testosterone concentration made from 1 to 8 hours after single dose administration of said testosterone undecanoate-containing composition at steady state; and

3) orally administering to the male subject twice a day with a meal a maintenance regimen including a daily dose of a testosterone undecanoate-containing composition, wherein the testosterone undecanoate-containing composition comprises about 14 wt % to about 35 wt % of the testosterone undecanoate-containing composition and wherein the maintenance regimen provides a daily dose of testosterone undecanoate within ±40% of the amount of testosterone undecanoate of the initial regimen daily dose to the subject based on the titration metric determined on the at least one titration node day of the initial regimen sufficient to provide a serum testosterone plasma concentration within the target range

wherein the testosterone undecanoate-containing composition provides upon single dose administration a ratio of serum testosterone $C_{max}$ to $C_{ave}$ of 2.7 or less or provides a dose-normalized serum testosterone $C_{ave}$ of about $1.9 \times 10 - 6$ $dL - 1$ or higher.

(Ex. A ('858 patent), cl. 1.)

17.    Independent claim 20 of the '858 patent recites a similar method of treatment as that of independent claim 1, but specifies a daily dosage range of 350 to 650 mg.  (*See* Ex. A ('858 patent), cl. 20.)

18.    The '057 patent entitled "High-Strength Testosterone Undecanoate Compositions," issued on December 8, 2015 and names Chandrashekar Giliyar, Basawaraj Chickmath, Chidambaram Nachiappan, Mahesh V. Patel, and Srinivansan Venkateshwaran as inventors.

19.    The '057 patent is generally directed to methods for replacement therapy in a male having a condition associated with a deficiency or absence of endogenous testosterone.  The methods disclosed in the '057 patent accomplish this, for example, through oral administration of a daily dosing regimen of a testosterone undecanoate composition where the testosterone undecanoate composition comprises a particular weight percentage, about 14 wt % to about 35 wt % of testosterone undecanoate, and the method provides a particular daily dose, about 360 mg to about 480 mg of testosterone undecanoate; determination of the serum level of testosterone during the daily dosing regimen at from 1-8 hours after single dose administration of the composition at steady state; and then oral administration of a maintenance daily dosing regimen of a testosterone undecanoate composition where the testosterone undecanoate composition comprises a particular weight percentage, about 14 wt % to about 35 wt %, and provides a daily dose of testosterone undecanoate within ± 40% of the amount of the testosterone undecanoate of the initial regimen. The composition used in this method provides a serum testosterone $C_{ave}$ in the male in the range of from about 300-1100 ng/dL.

20.    Claim 1 of the '057 patent is exemplary and recites:

> 1. A method for replacement therapy in a male having a condition associated with a deficiency or absence of endogenous testosterone said method comprising:

6

(a) Orally administering to said male a daily dosing regimen of a pharmaceutical composition comprising about 14 weight % (wt %) to about 35 wt % testosterone undecanoate and a carrier, that provides from about 360 mg to about 480 mg of testosterone undecanoate to said male per day;

(b) Determining the serum level of testosterone of said male during the daily dosing regimen at from 1-8 hours after single dose administration of said pharmaceutical composition at steady state; and

(c) Orally administering a maintenance daily dosing regimen of a pharmaceutical composition comprising about 14 wt % to about 35 wt % testosterone undecanoate and a carrier, that provides within plus or minus 40% of from about 360 mg to about 480 mg of testosterone undecanoate to said male based on the serum testosterone level determined in step (b),

to provide a serum testosterone Cave in said male in the range of from about 300-1100 ng/dL.

(Ex. B ('057 patent), cl. 1.)

21.     Independent claims 11 and 20 of the '057 patent recite a similar method of treatment as independent claim 1, but specify a daily dosage of from about 350 mg to about 650 mg; carriers comprising a monoglyceride, a fatty acid, a diglyceride, a polyoxyethylene hydrogenated vegetable oil, or a combination thereof; and that the pharmaceutical composition contains between 33-95% of the testosterone undecanoate dissolved in the carrier.  (*See* Ex. B ('057 patent), cls. 11, 20.)

22.     The '690 patent entitled "High-Strength Testosterone Undecanoate Compositions," issued on November 1, 2016 and names Chandrashekar Giliyar, Basawaraj Chickmath, Chidambaram Nachiappan, Mahesh V. Patel, and Srinivansan Venkateshwaran as inventors.

23.     The '690 patent is generally directed to methods for replacement therapy in a male having a condition associated with a deficiency or absence of endogenous testosterone.  The methods disclosed in the '690 patent accomplish this, for example, through oral administration of daily dosing regimen of a testosterone undecanoate composition where the testosterone

undecanoate composition comprises a particular weight percentage of testosterone undecanoate, about 14 wt % to about 35 wt % of testosterone undecanoate, and a carrier, that provides a particular daily dose, about 360 mg to about 480 mg of testosterone undecanoate; determination of the serum level of testosterone during the daily dosing regimen at from 1-8 hours after single dose administration of the composition at steady state; and then oral administration of a maintenance daily dosing regimen of a testosterone undecanoate composition where the testosterone undecanoate comprises a particular weight percentage, about 14 wt % to about 35 wt %, and provides a daily dose of testosterone undecanoate within ± 40% of the amount of the testosterone undecanoate of the initial regimen.  The composition used in this method provides a serum testosterone $C_{ave}$ in the male in the range of from about 300-1100 ng/dL.   The pharmaceutical composition further includes a carrier comprising a fatty acid and a polyoxyethylene hydrogenated vegetable oil.

24.     Claim 1 of the '690 patent is exemplary and recites:

> 1. A method for replacement therapy in a male having a condition associated with a deficiency or absence of endogenous testosterone said method comprising:
>
>> (a) Orally administering to said male a daily dosing regimen of a pharmaceutical composition comprising about 14 weight % (wt %) to about 35 wt % testosterone undecanoate and a carrier, that provides from about 360 mg to about 480 mg of testosterone undecanoate to said male per day;
>>
>> (b) Determining the serum level of testosterone of said male during the daily dosing regimen at from 1-8 hours after a single dose administration of said pharmaceutical composition at steady state; and
>>
>> (c) Orally administering a maintenance daily dosing regimen of a pharmaceutical composition comprising about 14 wt % to about 35 wt % testosterone undecanoate and a carrier, that provides within plus or minus 40% of from about 360 mg to about 480 mg of testosterone undecanoate to said male based on the serum testosterone level determined in step (b),
>>
>> to provide a serum testosterone $C_{ave}$ in said male in the range of from about 300-1100 ng/dL,

wherein said carrier comprises a fatty acid and a polyoxyethylene hydrogenated vegetable oil.

(Ex. C ('690 patent), cl. 1.)

25.     Independent claims 11 and 20 of the '690 patent recite a similar method of treatment as independent claim 1, but specify a daily dosage of from about 350 mg to about 650 mg and a carrier comprising a fatty acid (*e.g.*, oleic acid) and a polyoxyethylene hydrogenated vegetable oil (*e.g.*, Cremophor RH 40).  (*See* Ex. C ('690 patent), cls. 11, 20.)

26.     The '390 patent entitled "High-Strength Testosterone Undecanoate Compositions," issued on September 12, 2017 and names Chandrashekar Giliyar, Basawaraj Chickmath, Chidambaram Nachiappan, Mahesh V. Patel, and Srinivansan Venkateshwaran as inventors.

27.     The '390 patent is generally directed to methods for replacement therapy in a male having a condition associated with a deficiency or absence of endogenous testosterone.  The methods disclosed in the '390 patent accomplish this through oral administration of daily dosing regimen of a testosterone undecanoate composition where the testosterone undecanoate comprises a particular weight percentage, about 14 wt % to about 35 wt % of testosterone undecanoate, and a particular daily dose, about 450 mg or about 480 mg of testosterone undecanoate; determination of the serum level of testosterone during the daily dosing regimen at from 1-8 hours after single dose administration of the composition at steady state; and then oral administration of a maintenance daily dosing regimen of a testosterone undecanoate composition where the testosterone undecanoate composition comprises a particular weight percentage, about 14 wt % to about 35 wt %, and provides a daily dose of testosterone undecanoate within ± 40% of the amount of the testosterone undecanoate of the initial regimen.  The composition used in this method provides a serum testosterone $C_{ave}$ in the male in the range of from about 300-1100 ng/dL.

28.     Claim 1 of the '390 patent is exemplary and recites:

1. A method for replacement therapy in a male having a condition associated with a deficiency or absence of endogenous testosterone said method comprising:

(a) Orally administering to said male a daily dosing regimen of a pharmaceutical composition comprising about 14 weight % (wt %) to about 35 wt % testosterone undecanoate and a carrier, that provides about 450 mg or about 480 mg of testosterone undecanoate to said male per day;

(b) Determining the serum level of testosterone of said male during the daily dosing regimen at from 1-8 hours after single dose administration of said pharmaceutical composition at steady state; and

(c) Orally administering a maintenance daily dosing regimen of a pharmaceutical composition comprising about 14 wt % to about 35 wt % testosterone undecanoate and a carrier, that provides within plus or minus 40% of about 450 mg or 480 mg of testosterone undecanoate to said male per day

to provide a serum testosterone Cave in said male in the range of from about 300-1100 ng/dL.

(Ex. D ('390 patent), cl. 1.)

29.     Independent claims 13 and 24 of the '390 patent recite a similar method of treatment as independent claim 1, but specify a carrier comprising a monoglyceride, a diglyceride, and a hydrophilic surfactant; and that the pharmaceutical composition contains between 35-95% of the testosterone undecanoate dissolved in the carrier.  (*See* Ex. D ('390 patent), cls. 13, 24.)

30.     The '463 patent entitled "Solid Carriers for Improved Delivery of Hydrophobic Active Ingredients in Pharmaceutical Compositions," issued on May 27, 2003 and names Mahesh V. Patel and Feng-Jing Chen as inventors.

31.     The '463 patent is directed to a pharmaceutical composition for improved delivery of a variety of pharmaceutical active ingredients.  The composition of the '463 patent is, for example, in the form of a solid carrier comprising an admixture of a hydrophobic pharmaceutical active ingredient, an effective solubilizing amount of at least one hydrophilic surfactant, and a

10

lipophilic additive, wherein the effective solubilizing amount of the at least one hydrophilic surfactant is an amount effective to partially or fully solubilize the pharmaceutical active ingredient in the solid carrier.

32.     Claim 29 is exemplary and recites:

> A pharmaceutical composition in the form of a solid carrier comprising an admixture of a hydrophobic pharmaceutical active ingredient an effective solubilizing amount of at least one hydrophilic surfactant, and a lipophilic additive selected from the group consisting of lipophilic surfactants, triglycerides, and combinations thereof, wherein the effective solubilizing amount of the at least one hydrophilic surfactant is an amount effective to partially or fully solubilize the pharmaceutical active ingredient in the solid carrier.

(Ex. E ('463 patent), cl. 29.)

33.     The '988 patent entitled "Solid Carriers for Improved Delivery of Active Ingredients in Pharmaceutical Compositions," issued on August 2, 2005 and names Mahesh V. Patel and Feng-Jing Chen as inventors.

34.     The '988 patent is directed to a pharmaceutical composition for improved delivery of a variety of pharmaceutical active ingredients.  The composition of the '988 patent is, for example, in the form of a solid carrier comprising an admixture of a pharmaceutical active ingredient selected from a prescribed subset, a hydrophilic surfactant in an amount effective to partially or fully solubilize the pharmaceutically active ingredient in the solid carrier, and at least one hydrophilic surfactant selected from one of four defined categories in an amount effective to facilitate sustained solubilization of the active ingredient upon administration.

35.     Claim 1 is illustrative and recites:

> A pharmaceutical composition in the form of a solid carrier comprising an admixture of:

> (a) a pharmaceutical active ingredient selected from the group consisting of: analgesics, anti-inflammatory agents, antihelminthics, anti-arrhythmic agents, anti-bacterial agents, anti-viral agents, anti-coagulants, anti-depressants, anti-diabetics,

anti-epileptics, anti-fungal agents, anti-gout agents, anti-hypertensive agents, anti-malarials, anti-migraine agents, anti-muscarinic agents, anti-neoplastic agents, erectile dysfunction improvement agents, immunosuppressants, anti-protozoal agents, anti-thyroid agents, anxiolytic agents, sedatives, hypnotics, neuroleptics, β-blockers, cardiac inotropic agents, corticosteroids, diuretics, anti-parkinsonian agents, gastro-intestinal agents, histamine receptor antagonists, keratolyptics, lipid regulating agents, anti-anginal agents, Cox-2 inhibitors, leukotriene inhibitors, macrolides, muscle relaxants, nutritional agents, opiod analgesics, protease inhibitors, sex hormones, stimulants, muscle relaxants, anti-osteoporosis agents, anti-obesity agents, cognition enhancers, anti-urinary incontinence agents, nutritional oils, anti-benign prostate hypertrophy agents, essential fatty acids, non-essential fatty acids, and mixtures thereof,

(b) an effective solubilizing amount of at least one hydrophilic surfactant, which is effective to partially or fully solubilize the pharmaceutically active ingredient in the solid carrier, and optionally

(c) an additive, wherein the at least one hydrophilic surfactant is selected from: (i) a hydrophilic surfactant that solidifies at ambient room temperature; (ii) a mixture of hydrophilic surfactants that in combination solidify at ambient room temperature; (iii) a hydrophilic surfactant that solidifies at ambient room temperature in the presence of the additive; and (iv) a combination of two or more of (i), (ii), and (iii), wherein the effective solubilizing amount of the at least one hydrophilic surfactant is an amount effective to facilitate sustained solubilization of the active ingredient upon administration, with the proviso that when the at least one hydrophilic surfactant includes (iii), the composition then includes the optional additive.

(Ex. F ('988 patent), cl. 1.)

36.     Lipocine, as assignee, owns the entire right, title, and interest in each of the Asserted Patents.

**Clarus' NDA Product: JATENZO®**

37.     Upon information and belief, Clarus has developed an oral testosterone undecanoate formulation ("Clarus NDA Product").

38.     Upon information and belief, on January 3, 2014, Clarus filed a New Drug Application No. 206089 ("the Clarus NDA") with the FDA seeking approval to market the Clarus NDA Product.

39.     Upon information and belief, during the FDA review period for the Clarus NDA Product, the FDA's Bone, Reproductive and Urologic Drug Advisory Committee and Drug Safety and Risk Management Advisory Committee voted that the overall risk/benefit profile of the Clarus NDA Product was not acceptable to support approval.  (Ex. H (2014-09-18 Clarus Press Release).)

40.     Upon information and belief, Clarus conducted a new Phase 3 clinical investigation of the Clarus NDA Product.  (Ex. I (2017-06-26 Clarus Press Release).)

41.     Upon further information and belief, on or around June 26, 2017, Clarus resubmitted its NDA for FDA approval, highlighting the results of its recent Phase 3 clinical investigation to address the points raised by the FDA in its previous rejection.  (*See id*.)

42.     On March 27, 2019, Clarus received FDA approval to commercialize the Clarus NDA Product, JATENZO®.  (Ex. G (2019-03-27 Clarus Press Release).)

43.     Clarus has announced its intention to launch JATENZO® by the end of 2019.  (*See id*.)

44.     The Clarus NDA Product, JATENZO®, falls within the scope of one or more claims of the Asserted Patents as demonstrated, for example, by Clarus' public statements and the JATENZO® label.

45.     Upon information and belief, Clarus intends to market JATENZO® for testosterone replacement therapy.  (*See id*.; Ex. J (JATENZO® Proposed Label), p. 3)  Specifically, upon information and belief, Clarus intends to market JATENZO® for adult males with conditions associated with a deficiency or absence of endogenous testosterone.  (Ex. G (2019-03-27 Clarus Press Release); Ex. J (JATENZO® Proposed Label), p. 3.)

46.     Upon information and belief, JATENZO® is provided as a gelatin capsule containing testosterone undecanoate.  (Ex. J (JATENZO® Proposed Label), p. 13.)

47.     Upon information and belief, the wt % of the testosterone undecanoate in JATENZO® is between 14 wt % and 35 wt %.  (*See, e.g.*, Ex. K (U.S. Patent Application Publication 2014-0274986 A1).)

48.     Upon information and belief, JATENZO® capsules for oral use are available in the following three strengths: 158 mg, 198 mg, and 237 mg, for twice-daily administration with food. (Ex. J (JATENZO® Proposed Label), pp. 1, 4, 13; *see also* Ex. G (2019-03-27 Clarus Press Release).)

49.     Upon information and belief, the daily dose of JATENZO® is based on the individual patient's serum testosterone concentration response to the drug.  (Ex. J (JATENZO® Proposed Label), p. 4.)

50.     Upon information and belief, the recommended starting dose is 237 mg, taken orally twice daily—once in the morning, once in the evening—resulting in a starting daily dose of 474 mg.  (*See id.*, p. 4.)

51.     Upon information and belief, JATENZO® is to be taken with food.  (*See id.*; Ex. L (Clarus Product Formulation webpage).)

52.     Upon information and belief, to ensure proper dose adjustment, serum testosterone concentration is to be measured 6 hours after the morning dose. (Ex. J (JATENZO® Proposed Label), p. 4.)

53.     Upon further information and belief, depending on the measured serum testosterone concentration, the daily dose should be adjusted in accordance with the recommended adjustments set forth in Table 1 of the JATENZO® proposed label.  (*See id.*)  Upon information and belief, adjusting the dosage in accordance with Table 1 of the proposed label, constitutes a variance within ± 40% of the initial amount of the testosterone undecanoate-containing composition.  (*See id.*)

54.     Upon information and belief, after at least seven (7) days after starting treatment or adjusting the dose, the serum testosterone concentration is then checked.  (*See id*.)

55.     Upon information and belief, there is to be periodic monitoring of serum testosterone concentrations 6 hours after the morning dose.  (*See id*.)

56.     Upon information and belief, where treatment is recommended, the minimum recommended dose is 158 mg twice daily and the maximum recommended dose is 396 mg twice daily.  (*See id*.)

57.     Upon information and belief, dosing for JATENZO® should be adjusted to achieve a serum testosterone concentration of between 425 ng/dL to 970 ng/dL.  (Ex. J (JATENZO® Proposed Label), p. 4.)

58.     Upon information and belief, the $C_{ave}$ and $C_{max}$ plasma testosterone pharmacokinetic ("PK") parameters of JATENZO® are 403±128 ng/dL and 1008±581 ng/dL, respectively, such that the ratio of the serum $C_{max}$ to $C_{ave}$ is ~2.5.  (*See id.*, p. 15.)

59.     Upon information and belief, each capsule contains the following inactive ingredients: oleic acid, polyoxyl 40 hydrogenated castor oil (Cremophor RH 40), borage seed oil, peppermint oil, and butylated hydroxytoluene.  (*See id*., p. 14.)

60.     Upon information and belief, the active pharmaceutical agent in JATENZO®, testosterone undecanoate, is partially or fully solubilized in these inactive ingredient carriers.

61.     Upon information and belief, the active pharmaceutical agent in JATENZO®, testosterone undecanoate, is partially or fully solubilized by Cremophor RH 40.

62.     Upon information and belief, Cremophor RH 40 is a polyoxyethylene hydrogenated vegetable oil and solidifies at ambient room temperature.  (*See* Ex. M (Cremophor RH 40, Technical Information, BASF, August 1997).)

63.     Upon information and belief, JATENZO® comprises a pharmaceutical composition in the form of a solid carrier (*e.g.*, gelatin capsule) comprising an admixture of a hydrophobic pharmaceutical active ingredient (*e.g.*, testosterone undecanoate), an effective solubilizing amount of at least one hydrophilic surfactant (*e.g.*, Cremophor RH 40), and a lipophilic additive (*e.g.*, oleic acid, borage seed oil, and/or peppermint oil).   (*See* Ex. J (JATENZO® Proposed Label), p. 14.)

64.     Upon information belief, Clarus intends to manufacture, market, offer for sale, and/or sell JATENZO® throughout the United States, including in the State of Delaware.

65.     Upon information and belief, now that Clarus has received FDA approval, its manufacture, marketing, offering for sale, and/or sales of JATENZO® is imminent.   Specifically, upon further information and belief, Clarus expects JATENZO® to be available in pharmacies by the end of 2019.   (Ex. G (2019-03-27 Clarus Press Release).)

66.     This is an action to stop Clarus from manufacturing, using, selling, offering to sell, and/or importing JATENZO® in the United States in violation of Plaintiff's patent rights and to recover damages for Clarus' infringement of the Asserted Patents.

67.     As of the filing of this complaint, Plaintiff has not been able to obtain a copy of Clarus' NDA No. 206089.   Plaintiff is not aware of any other means for obtaining information regarding Clarus' JATENZO® drug product.   In the absence of such information, Plaintiff resorts to the judicial process and the aid of discovery to obtain, under appropriate judicial safeguards, such information as is required to confirm its allegations of infringement and to present the Court evidence that Clarus' JATENZO® drug product falls within the scope of one or more claims of the Asserted Patents.

**Lipocine's NDA Product: TLANDO™**

68.     Lipocine is a specialty pharmaceutical company developing innovative pharmaceutical products for use in men's and women's health using its proprietary drug delivery technologies.

69.     Lipocine and Clarus are direct competitors with respect to their development of oral drug products using testosterone undecanoate for replacement therapy in males having a deficiency or absence of endogenous testosterone.

70.     On August 27, 2015, Lipocine filed an NDA ("the Lipocine NDA") with the United States Food and Drug Administration ("FDA") seeking approval to market an oral testosterone undecanoate formulation, referred to by Lipocine as TLANDO™.

71.     TLANDO™ is a novel, oral testosterone replacement therapy product candidate containing Testosterone Undecanoate ("TU") that is designed to help restore normal testosterone levels in males for conditions associated with a deficiency or absence of endogenous testosterone. (Ex. N (Lipocine "About Us" webpage).)

72.     TLANDO™, as an oral treatment, is non-invasive, easier for patients to use properly, and minimizes or eliminates the inconveniences or risks associated with conventional, existing testosterone replacement therapies.  Indeed, TLANDO™ is designed to overcome many of the issues related to testosterone replacement therapy products on the U.S. market.  (Ex. O (Lipocine "TLANDO™ Overview" webpage).)

73.     On May 8, 2018, the FDA rejected Lipocine's NDA for TLANDO™, prompting Lipocine to prepare for resubmission in the second quarter or 2019.  (Ex. P (Lipocine "Clinical Trials" webpage).)

74.     Lipocine recently completed two Phase 3 clinical studies with TLANDO™: a Dosing Validation ("DV") Study and a Dosing Flexibility ("DF") Study.  (*See id*.)  Prior to these two studies, Lipocine completed a 52-week safety study to evaluate the efficacy of TLANDO™. (*See id*.)

## COUNT 1:

### (Declaratory Judgment of Indirect Infringement under 35 U.S.C. § 271(b) and/or (c) of the '858 Patent)

75.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

76.     These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

77.     There is an actual case or controversy such that the Court may entertain Plaintiff's request for declaratory relief consistent with Article III of the United States Constitution and that actual case or controversy requires a declaration of rights by this Court.

78.     On information and belief, Clarus' JATENZO® product is covered by the claims of the '858 patent.

79.     Clarus has actual knowledge of the '858 patent.

80.     On information and belief, Clarus became aware of the '858 patent no later than when it was issued by the Patent Office.

81.     On information and belief, Clarus has acted with full knowledge of the '858 patent and without a reasonable basis for believing that it would not be liable for actively inducing or contributing to the infringement of the '858 patent.

82.     On information and belief, Clarus has or will engage in the manufacturing, use, sale, offer for sale, and/or importation of JATENZO® product described in NDA No. 206089 imminently, as final approval of such NDA was granted on March 27, 2019.

83.     The commercial manufacture, use, sale, offer for sale, and/or importation of Clarus' JATENZO® product will induce the actual infringement of the '858 patent.

84.     On information and belief, Clarus knows or should know that its commercial manufacture, use, sale, offer for sale, and/or importation of its JATENZO® product will actively induce the actual infringement of the '858 patent.

85.     On information and belief, Clarus will include within the packaging of its JATENZO® product, a label and/or instructions that encourage, recommend, and/or promote physicians and patients to infringe the claims of the '858 patent.

86.     On information and belief, Clarus will encourage another's infringement of the '858 patent by and through the commercial manufacture, use, sale, offer for sale, and/or importation of its JATENZO® product, which is covered by the claims of the '858 patent.

87.     Clarus' act of infringement will be done with the knowledge of the '858 patent and with the intent to encourage infringement.

88.     The foregoing actions by Clarus will constitute active inducement of the infringement of the '858 patent.

89.     On information and belief, Clarus knows or should know that its JATENZO® product will be especially made or especially adapted for use in an infringement of the '858 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

90.     On information and belief, Clarus knows or should know that there are no substantial non-infringing uses for its JATENZO® Product.

91.     The commercial manufacture, use, sale, offer for sale, and/or importation of Clarus' JATENZO® Product will contribute to the actual infringement of the '858 patent.

92.     On information and belief, Clarus knows or should know that its offer for sale, sale, and/or importation of its JATENZO® product will contribute to the actual infringement of the '858 patent.

93.     The foregoing actions by Clarus will constitute contributory infringement of the '858 patent.

94.     On information and belief, Clarus intends to, has and/or will, actively induce and contribute to the infringement of the '858 patent imminently, as final approval of the JATENZO® NDA was granted on March 27, 2019.

95.     Plaintiffs are entitled to a declaratory judgment that the commercial manufacture, use, offer for sale, sale, and/or importation of JATENZO® by Clarus will induce and/or contribute to infringement of the '858 patent.

96.     The commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® Product, which will actively induce and/or contribute to the infringement of the '858 patent, in violation of Plaintiff's patent rights, will cause harm to Plaintiffs for which damages are inadequate.

97.     Unless Clarus is enjoined from actively inducing and contributing to the infringement of the '858 patent, Plaintiff will suffer irreparable injury for which damages are an inadequate remedy.

98.     Plaintiff is entitled to the relief provided by 35 U.S.C. § 284 including, *inter alia*, damages adequate to compensate Plaintiff for the infringement, but not less than a reasonable royalty and/or lost profits for the use made of the invention of the '858 patent by Clarus together with interest and costs.

99. On information and belief, despite having actual notice of the '858 patent, Clarus will or continue to prepare to actively induce and/or contribute to infringement of the '858 patent in disregard of Plaintiff's rights, making this case exceptional and entitling Plaintiff to reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT 2:

### (Declaratory Judgment of Indirect Infringement under
### 35 U.S.C. § 271(b) and/or (c) of the '057 Patent)

100. Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

101. These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

102. There is an actual case or controversy such that the Court may entertain Plaintiff's request for declaratory relief consistent with Article III of the United States Constitution and that actual case or controversy requires a declaration of rights by this Court.

103. On information and belief, Clarus' JATENZO® product is covered by the claims of the '057 patent.

104. Clarus has actual knowledge of the '057 patent.

105. On information and belief, Clarus became aware of the '057 patent no later than when it was issued by the Patent Office.

106. On information and belief, Clarus has acted with full knowledge of the '057 patent and without a reasonable basis for believing that it would not be liable for actively inducing or contributing to the infringement of the '057 patent.

107. On information and belief, Clarus has or will engage in the manufacturing, use, sale, offer for sale, and/or importation of JATENZO® product described in NDA No. 206089 imminently, as final approval of such NDA was granted on March 27, 2019.

108.    The commercial manufacture, use, sale, offer for sale, and/or importation of Clarus' JATENZO® product will induce the actual infringement of the '057 patent.

109.    On information and belief, Clarus knows or should know that its commercial manufacture, use, sale, offer for sale, and/or importation of its JATENZO® product will actively induce the actual infringement of the '057 patent.

110.    On information and belief, Clarus will include within the packaging of its JATENZO® product, a label and/or instructions that encourage, recommend, and/or promote physicians and patients to infringe the claims of the '057 patent.

111.    On information and belief, Clarus will encourage another's infringement of the '057 patent by and through the commercial manufacture, use, sale, offer for sale, and/or importation of its JATENZO® product, which is covered by the claims of the '057 patent.

112.    Clarus' act of infringement will be done with the knowledge of the '057 patent and with the intent to encourage infringement.

113.    The foregoing actions by Clarus will constitute active inducement of the infringement of the '057 patent.

114.    On information and belief, Clarus knows or should know that its JATENZO® product will be especially made or especially adapted for use in an infringement of the '057 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

115.    On information and belief, Clarus knows or should know that there are no substantial non-infringing uses for its JATENZO® Product.

116.    The commercial manufacture, use, sale, offer for sale, and/or importation of Clarus' JATENZO® Product will contribute to the actual infringement of the '057 patent.

117.    On information and belief, Clarus knows or should know that its offer for sale, sale, and/or importation of its JATENZO® product will contribute to the actual infringement of the '057 patent.

118.    The foregoing actions by Clarus will constitute contributory infringement of the '057 patent.

119.    On information and belief, Clarus intends to, has and/or will, actively induce and contribute to the infringement of the '057 patent imminently, as final approval of the JATENZO® NDA was granted on March 27, 2019.

120.    Plaintiffs are entitled to a declaratory judgment that the commercial manufacture, use, offer for sale, sale, and/or importation of JATENZO® by Clarus will induce and/or contribute to infringement of the '057 patent.

121.    The commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® Product, which will actively induce and/or contribute to the infringement of the '057 patent, in violation of Plaintiff's patent rights, will cause harm to Plaintiffs for which damages are inadequate.

122.    Unless Clarus is enjoined from actively inducing and contributing to the infringement of the '057 patent, Plaintiff will suffer irreparable injury for which damages are an inadequate remedy.

123.    Plaintiff is entitled to the relief provided by 35 U.S.C. § 284 including, inter alia, damages adequate to compensate Plaintiff for the infringement, but not less than a reasonable royalty and/or lost profits for the use made of the invention of the '057 patent by Clarus together with interest and costs.

124.     On information and belief, despite having actual notice of the '057 patent, Clarus will or continue to prepare to actively induce and/or contribute to infringement of the '057 patent in disregard of Plaintiff's rights, making this case exceptional and entitling Plaintiff to reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT 3:

### (Declaratory Judgement of Indirect Infringement under 35 U.S.C. § 271(b) & (c) of the '690 Patent)

125.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

126.     These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

127.     There is an actual case or controversy such that the Court may entertain Plaintiff's request for declaratory relief consistent with Article III of the United States Constitution and that actual case or controversy requires a declaration of rights by this Court.

128.     On information and belief, Clarus' JATENZO® product is covered by the claims of the '690 patent.

129.     Clarus has actual knowledge of the '690 patent.

130.     On information and belief, Clarus became aware of the '690 patent no later than when it was issued by the Patent Office.

131.     On information and belief, Clarus has acted with full knowledge of the '690 patent and without a reasonable basis for believing that it would not be liable for actively inducing or contributing to the infringement of the '690 patent.

132.     On information and belief, Clarus has or will engage in the manufacturing, use, sale, offer for sale, and/or importation of JATENZO® product described in NDA No. 206089 imminently, as final approval of such NDA was granted on March 27, 2019.

133.    The commercial manufacture, use, sale, offer for sale, and/or importation of Clarus' JATENZO® product will induce the actual infringement of the '690 patent.

134.    On information and belief, Clarus knows or should know that its commercial manufacture, use, sale, offer for sale, and/or importation of its JATENZO® product will actively induce the actual infringement of the '690 patent.

135.    On information and belief, Clarus will include within the packaging of its JATENZO® product, a label and/or instructions that encourage, recommend, and/or promote physicians and patients to infringe the claims of the '690 patent.

136.    On information and belief, Clarus will encourage another's infringement of the '690 patent by and through the commercial manufacture, use, sale, offer for sale, and/or importation of its JATENZO® product, which is covered by the claims of the '690 patent.

137.    Clarus' act of infringement will be done with the knowledge of the '690 patent and with the intent to encourage infringement.

138.    The foregoing actions by Clarus will constitute active inducement of the infringement of the '690 patent.

139.    On information and belief, Clarus knows or should know that its JATENZO® product will be especially made or especially adapted for use in an infringement of the '690 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

140.    On information and belief, Clarus knows or should know that there are no substantial non-infringing uses for its JATENZO® Product.

141.    The commercial manufacture, use, sale, offer for sale, and/or importation of Clarus' JATENZO® Product will contribute to the actual infringement of the '690 patent.

25

142.    On information and belief, Clarus knows or should know that its offer for sale, sale, and/or importation of its JATENZO® product will contribute to the actual infringement of the '690 patent.

143.    The foregoing actions by Clarus will constitute contributory infringement of the '690 patent.

144.    On information and belief, Clarus intends to, has and/or will, actively induce and contribute to the infringement of the '690 patent imminently, as final approval of the JATENZO® NDA was granted on March 27, 2019.

145.    Plaintiffs are entitled to a declaratory judgment that the commercial manufacture, use, offer for sale, sale, and/or importation of JATENZO® by Clarus will induce and/or contribute to infringement of the '690 patent.

146.    The commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® Product, which will actively induce and/or contribute to the infringement of the '690 patent, in violation of Plaintiff's patent rights, will cause harm to Plaintiffs for which damages are inadequate.

147.    Unless Clarus is enjoined from actively inducing and contributing to the infringement of the '690 patent, Plaintiff will suffer irreparable injury for which damages are an inadequate remedy.

148.    Plaintiff is entitled to the relief provided by 35 U.S.C. § 284 including, inter alia, damages adequate to compensate Plaintiff for the infringement, but not less than a reasonable royalty and/or lost profits for the use made of the invention of the '690 patent by Clarus together with interest and costs.

149.    On information and belief, despite having actual notice of the '690 patent, Clarus

will or continue to prepare to actively induce and/or contribute to infringement of the '690 patent

in disregard of Plaintiff's rights, making this case exceptional and entitling Plaintiff to reasonable

attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT 4:

### (Declaratory Judgment of Indirect Infringement under
### 35 U.S.C. § 271(b) and/or (c) of the '390 Patent)

150.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

151.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and

2202.

152.    There is an actual case or controversy such that the Court may entertain Plaintiff's

request for declaratory relief consistent with Article III of the United States Constitution and that

actual case or controversy requires a declaration of rights by this Court.

153.    On information and belief, Clarus' JATENZO® product is covered by the claims

of the '390 patent.

154.    Clarus has actual knowledge of the '390 patent.

155.    On information and belief, Clarus became aware of the '390 patent no later than

when it was issued by the Patent Office.

156.    On information and belief, Clarus has acted with full knowledge of the '390 patent

and without a reasonable basis for believing that it would not be liable for actively inducing or

contributing to the infringement of the '390 patent.

157.    On information and belief, Clarus has or will engage in the manufacturing, use,

sale, offer for sale, and/or importation of JATENZO® product described in NDA No. 206089

imminently, as final approval of such NDA was granted on March 27, 2019.

158.    The commercial manufacture, use, sale, offer for sale, and/or importation of Clarus' JATENZO® product will induce the actual infringement of the '390 patent.

159.    On information and belief, Clarus knows or should know that its commercial manufacture, use, sale, offer for sale, and/or importation of its JATENZO® product will actively induce the actual infringement of the '390 patent.

160.    On information and belief, Clarus will include within the packaging of its JATENZO® product, a label and/or instructions that encourage, recommend, and/or promote physicians and patients to infringe the claims of the '390 patent.

161.    On information and belief, Clarus will encourage another's infringement of the '390 patent by and through the commercial manufacture, use, sale, offer for sale, and/or importation of its JATENZO® product, which is covered by the claims of the '390 patent.

162.    Clarus' act of infringement will be done with the knowledge of the '390 patent and with the intent to encourage infringement.

163.    The foregoing actions by Clarus will constitute active inducement of the infringement of the '390 patent.

164.    On information and belief, Clarus knows or should know that its JATENZO® product will be especially made or especially adapted for use in an infringement of the '390 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

165.    On information and belief, Clarus knows or should know that there are no substantial non-infringing uses for its JATENZO® Product.

166.    The commercial manufacture, use, sale, offer for sale, and/or importation of Clarus' JATENZO® Product will contribute to the actual infringement of the '390 patent.

167.    On information and belief, Clarus knows or should know that its offer for sale, sale, and/or importation of its JATENZO® product will contribute to the actual infringement of the '390 patent.

168.    The foregoing actions by Clarus will constitute contributory infringement of the '390 patent.

169.    On information and belief, Clarus intends to, has and/or will, actively induce and contribute to the infringement of the '390 patent imminently, as final approval of the JATENZO® NDA was granted on March 27, 2019.

170.    Plaintiffs are entitled to a declaratory judgment that the commercial manufacture, use, offer for sale, sale, and/or importation of JATENZO® by Clarus will induce and/or contribute to infringement of the '390 patent.

171.    The commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® Product, which will actively induce and/or contribute to the infringement of the '390 patent, in violation of Plaintiff's patent rights, will cause harm to Plaintiffs for which damages are inadequate.

172.    Unless Clarus is enjoined from actively inducing and contributing to the infringement of the '390 patent, Plaintiff will suffer irreparable injury for which damages are an inadequate remedy.

173.    Plaintiff is entitled to the relief provided by 35 U.S.C. § 284 including, inter alia, damages adequate to compensate Plaintiff for the infringement, but not less than a reasonable royalty and/or lost profits for the use made of the invention of the '390 patent by Clarus together with interest and costs.

174.    On information and belief, despite having actual notice of the '390 patent, Clarus will or continue to prepare to actively induce and/or contribute to infringement of the '390 patent in disregard of Plaintiff's rights, making this case exceptional and entitling Plaintiff to reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT 5:

### (Declaratory Judgment of Direct Infringement under
### 35 U.S.C. § 271(a) of the '463 Patent)

175.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

176.    These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

177.    There is an actual case or controversy such that the Court may entertain Plaintiff's request for declaratory relief consistent with Article III of the United States Constitution and that actual case or controversy requires a declaration of rights by this Court.

178.    The commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® product described in NDA No. 206089 will constitute an act of direct in infringement of one or more claims of the '463 patent, either literally or under the doctrine of equivalents.

179.    On information and belief, Clarus will engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® product described in NDA No. 206089 imminently, as final approval of such NDA was granted on March 27, 2019.

180.    Clarus has made, and will continue to make, substantial preparation in the United States to commercially manufacture, offer for sale, sale, and/or import Clarus' JATENZO® product described in FDA approved NDA No. 206089 prior to the expiration of the claims of the '463 patent.

181.    Upon information and belief, JATENZO® is a pharmaceutical composition demonstrating improved delivery of pharmaceutically active ingredients.

182.    Upon information and belief, JATENZO® comprises a solid carrier with a substrate and an encapsulation coat on the substrate.

183.    Upon information and belief, the encapsulation coat of JATENZO® comprises an admixture of a hydrophobic pharmaceutical active ingredient, a hydrophilic surfactant, and a lipophilic additive consisting of a lipophilic surfactant, triglyceride, or a combination thereof.

184.    Upon information and belief, the hydrophilic surfactant is present in an amount to partially or fully solubilize the pharmaceutical active ingredient in the encapsulation coat.

185.    The commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® product will constitute direct infringement of the '463 patent under 35 U.S.C. § 271(a).

186.    Clarus will commit those acts of infringement without license or authorization.

187.    Upon information and belief, Clarus became aware of the '463 patent no later than May 27, 2003, when it was issued by the Patent Office.

188.    Unless Clarus is enjoined from infringing the '463 patent, Plaintiff will suffer irreparable injury for which damages are an inadequate remedy.

189.    Plaintiff is entitled to a declaratory judgment that the commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® product described in NDA No. 206089 by Clarus will infringe the '463 patent.

190.    Plaintiff is entitled to the relief provided by 35 U.S.C. § 284, including, *inter alia*, damages adequate to compensate Plaintiff for the infringement, but not less than a reasonable

royalty and/or lost profits for the use made of the invention of the '463 patent by Clarus, together with interest and costs.

191.     Upon information and belief, despite having actual notice of the '463 patent, Clarus will or continue to actively infringe the '463 patent in disregard of Plaintiff's rights, making this case exceptional and entitling Plaintiff to reasonable attorney's fees pursuant to 35 U.S.C. § 285.

## COUNT 6:

### (Declaratory Judgment of Direct Infringement under
### 35 U.S.C. § 271(a) of the '988 Patent)

192.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

193.     These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

194.     There is an actual case or controversy such that the Court may entertain Plaintiff's request for declaratory relief consistent with Article III of the United States Constitution and that actual case or controversy requires a declaration of rights by this Court.

195.     The commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® product described in NDA No. 206089 will constitute an act of direct in infringement of one or more claims of the '988 patent, either literally or under the doctrine of equivalents.

196.     On information and belief, Clarus will engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® product described in NDA No. 206089 imminently, as final approval of such NDA was granted on March 27, 2019.

197.     Clarus has made, and will continue to make, substantial preparation in the United States to commercially manufacture, offer for sale, sale, and/or import Clarus' JATENZO® product described in FDA approved NDA No. 206089 prior to the expiration of the claims of the '988 patent.

198.    Upon information and belief, JATENZO® is a pharmaceutical composition demonstrating improved delivery of pharmaceutically active ingredients.

199.    Upon information and belief, JATENZO® comprises a solid carrier comprising a pharmaceutical active ingredient consisting of a sex hormone or non-essential fatty acid.

200.    Upon information and belief, the solid carrier of JATENZO® further comprises a hydrophilic surfactant in an amount effective to partially or fully solubilize the pharmaceutically active ingredient in the solid carrier.

201.    Upon information and belief, the solid carrier of JATENZO® further comprises at least one hydrophilic surfactant that solidifies at ambient room temperature in an amount effective to facilitate sustained solubilization of the active ingredient.

202.    The commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® product will constitute direct infringement of the '988 patent under 35 U.S.C. § 271(a).

203.    Clarus will commit those acts of infringement without license or authorization.

204.    Upon information and belief, Clarus became aware of the '988 patent no later than August 2, 2005, when it was issued by the Patent Office.

205.    Unless Clarus is enjoined from infringing the '988 patent, Plaintiff will suffer irreparable injury for which damages are an inadequate remedy.

206.    Plaintiff is entitled to a declaratory judgment that the commercial manufacture, use, offer for sale, sale, and/or importation of Clarus' JATENZO® product described in NDA No. 206089 by Clarus will infringe the '988 patent.

207.    Plaintiff is entitled to the relief provided by 35 U.S.C. § 284, including, *inter alia*, damages adequate to compensate Plaintiff for the infringement, but not less than a reasonable

royalty and/or lost profits for the use made of the invention of the '988 patent by Clarus, together with interest and costs.

208. Upon information and belief, despite having actual notice of the '988 patent, Clarus will or continues to actively infringe the '988 patent in disregard of Plaintiff's rights, making this case exceptional and entitled Plaintiff to reasonable attorney's fees pursuant to 35 U.S.C. § 285.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for the following relief:

a. That judgment be entered that Clarus infringed the Asserted Patents by making, using, selling, offering to sell, and/or importation of JATENZO® in the United States;

b. That an injunction be issued permanently enjoining Clarus and their affiliates, officers, agents, employees, attorneys, and all persons in active concert of participation with and of them, from infringing the Asserted Patents;

c. A declaration that Clarus' commercial manufacture, use, offer for sale, or sale of JATENZO® within the United States, or importation of JATENZO® into the United States, prior to the expiration of the Asserted Patents (inclusive of any extensions), would constitute an act of infringement of the Asserted Patents;

d. A preliminary and permanent injunction enjoining Clarus, its officers, agents, servants, and employees, and those persons in active concert or participation with of them, and their successors and assigns, from commercially manufacturing, using, offering to sell, or selling

34

JATENZO® within the United States, or importing JATENZO® into the United States, prior to the expiration of the Asserted Patents, inclusive of any extensions;

e.     That Plaintiff be awarded damages adequate to compensate it for Defendant's past, present, and/or future infringement of the Asserted Patents, said damages being no less than a reasonably royalty and/or lost profits together with any pre-judgment and post-judgment interest as allowed by law, costs, and other damages permitted by 35 U.S.C. § 284;

f.     A judgment finding that Defendant's infringement of the Asserted Patents was deliberate and willful;

g.     That this case be declared exceptional under 35 U.S.C. § 285, and that Plaintiff be awarded reasonable attorneys' fees and costs;

h.     That an accounting be performed to determine the damages to be awarded to Plaintiff as a result of Clarus' infringing activities, including an accounting for infringing sales not presented at trial and an award of additional damages for any such infringing sales;

i.     An award to Plaintiff of costs and expenses that it incurs in prosecuting this action; and

j.     That this Court award such other and further relief as it may deem just and proper.

April 2, 2019                              FISH & RICHARDSON P.C.

                                          By: */s/ Gregory R. Booker*
                                          _____
                                              Gregory R. Booker (#4784)
                                              Grayson Sundermeir (#6517)
                                              222 Delaware Ave, 17th Floor
                                              Wilmington, DE 19801
                                              Phone: 302-778-5070
                                              Email: booker@fr.com; sundermeir@fr.com

                                              W. Chad Shear (#5711)
                                              Megan A. Chacon
                                              Fish & Richardson P.C.
                                              12390 El Camino Real
                                              San Diego, CA 92130
                                              Phone: 858-678-5070 / Fax: 858-678-5099
                                              Email: shear@fr.com; chacon@fr.com

                                          **ATTORNEYS FOR PLAINTIFF
                                          LIPOCINE INC.**