IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIPOCINE, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLARUS THERAPEUTICS, INC., <br><br> Defendant. | Civil Action No. 19-622-WCB <br> **FILED UNDER SEAL** |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion by defendant Clarus Therapeutics, Inc., to compel the production of sixteen documents that plaintiff Lipocine, Inc., has claimed are protected by the attorney-client privilege. Dkt. No. 131. Lipocine filed an opposition, Dkt. No. 132, and Clarus filed a reply, Dkt. No 133. For the following reasons, Clarus's motion is denied.

## BACKGROUND

Lipocine sued Clarus for patent infringement in April 2019. There are four remaining asserted patents in the case: U.S. Patent Nos. 9,034,858 ("the '858 patent"); 9,205,057 ("the '057 patent"); 9,480,690 ("the '690 patent"); and 9,757,390 ("the '390 patent"). The '057, '690, and '390 patents are all part of a chain of continuation patents tracing back to the '858 patent, which was filed on May 31, 2012. The asserted patents, which share a common specification, are generally directed to methods of administering oral testosterone undecanoate-containing compositions to men having low levels of natural testosterone. '858 patent, Abstract; *id.* at col. 1, line 20, through col. 2, line 25.

1

On May 20, 2020, shortly before the close of fact discovery, Clarus deposed Dr. Nachiappan Chidambaram, one of the named co-inventors of the asserted patents. Clarus questioned Dr. Chidambaram about certain testosterone undecanoate compositions and clinical data described in the patents. During that line of questioning, Clarus attempted to ask Dr. Chidambaram about email correspondence he had with several of his co-inventors in May 2012 regarding the preparation of data sets to be used in a draft continuation-in-part patent application that Lipocine was planning on filing. Lipocine filed that patent application on May 31, 2012, and the application eventually issued as the '858 patent. At the deposition, Lipocine clawed back the attachments to two emails, claiming that the documents were privileged because they had been prepared at the request of Lipocine's patent prosecution counsel. However, Lipocine permitted Clarus to ask Dr. Chidambaram several questions about the corresponding cover emails. *See* Dkt. No. 131-1, at pp. 189–206.

In the first email, another one of the named co-inventors, Dr. Chandrashekar Giliyar, asked Dr. Chidambaram to provide data that was needed for inclusion in the draft patent application. Dr. Giliyar stated in the email that he hoped Dr. Chidambaram could fill in most of the required data for the patent application by copying the data from a data set that had been generated for potential presentation at a "WIH meeting" that was to be held on May 10, 2012. In the second email, Dr. Chidambaram responded with the requested data.

When asked if the emails and attachments had been generated in response to a request from counsel, Dr. Chidambaram testified that Lipocine's counsel had been "thoroughly involved to and fro" and that counsel "were constantly working with us when we prepared this application, and giving their inputs and directions," but he could not recall whether counsel had been involved before the generation of the documents in question. Dr. Chidambaram noted that the initial email

2

had been sent by Dr. Giliyar and indicated that Dr. Giliyar would therefore be in a better position to know if those documents were prepared at the direction of counsel. Dkt. No. 131-1, at pp. 190–93, 202.

Clarus also questioned Dr. Chidambaram about the nature of the WIH meetings. Dr. Chidambaram testified that the WIH meetings were periodic scientific update meetings that Lipocine held at the time. He explained that WIH stands for Dr. William I. Higuchi, a scientific expert at Lipocine and one of its founders. In addition to Dr. Higuchi, Dr. Chidambaram said several other Lipocine employees would regularly attend those scientific update meetings. Dkt. No. 131-1, at pp. 194–95.

Clarus asked Dr. Chidambaram why he would be presenting data to be included in a patent application in a meeting with Dr. Higuchi. In response, Dr. Chidambaram corrected Clarus's counsel, explaining that the patent application was not discussed at the meeting. Instead, he said, all that was discussed at the meeting were "scientific findings." The fact that there was work simultaneously being done on a patent application was just a coincidence. Dkt. No. 131-1, at p. 197.

About a week after Dr. Chidambaram's deposition, Lipocine served a clawback letter on Clarus. Although the parties have not provided the court with a copy of that letter, their submissions indicate that Lipocine clawed back sixteen allegedly privileged documents that had been produced, including the two cover emails discussed during Dr. Chidambaram's deposition.[1] Lipocine also subsequently served a privilege log on Clarus. The privilege log included general

---

[1] Clarus, which bears the burden of demonstrating the waiver of an established privilege, *see Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc.*, 707 F. Supp. 2d 463, 469 (D. Del. 2010) ("The party seeking to obtain privileged information has the burden of proving that a waiver has occurred."), has not alleged that Lipocine waived the attorney-client privilege with respect to the two cover emails discussed during Dr. Chidambaram's deposition by allowing questioning about those emails at the deposition. *See generally* Dkt. Nos. 131, 133.

descriptions of the sixteen documents that had been clawed back. Those descriptions indicated that all sixteen documents were prepared for the purpose of seeking legal advice regarding the prosecution of the continuation-in-part application that became the '858 patent. The privilege log also included descriptions of dozens of other documents relating to Lipocine's communications with its attorneys regarding the prosecution of the continuation-in-part application as well as its parent application. Clarus does not challenge Lipocine's claim that those other documents are privileged.

The day after Lipocine served the clawback letter, Clarus deposed Dr. Giliyar. Clarus questioned Dr. Giliyar about the email he had sent to Dr. Chidambaram. Dr. Giliyar explained that he had requested Dr. Chidambaram to provide certain technical data. He had attached a form to his email that Dr. Chidambaram could fill in with the requested data. Dr. Giliyar testified that he created the attachment to his email based on an explanation from Lipocine's attorney about the required format for the data that was needed for the draft patent application. Dkt. No. 131-2, at pp. 202–05.

Clarus also asked Dr. Giliyar about the source of the data that the Lipocine scientists were collecting to send to counsel. Dr. Giliyar said that the data that had been generated for potential presentation at the "WIH meeting" on May 10, 2012, had, in fact, been presented at that meeting. Dkt. No. 131-2, at pp. 207–08. Clarus, however, did not question Dr. Giliyar about what portions of that data, if any, had been sent to Lipocine's attorney for inclusion in the draft patent application. Nor did Clarus ask about Dr. Chidambaram's response to Dr. Giliyar's email, in which Dr. Chidambaram provided the requested data for potential inclusion in the patent application.

Clarus also questioned Dr. Giliyar about the WIH meetings. Dr. Giliyar said that most of the company (approximately five or six individuals) would be at the meetings because the

company was small at the time. On occasion, third-party consultants would attend WIH meetings, "[b]ut, by and large," Lipocine didn't have any consultants at those meetings.

The parties completed fact discovery on June 5, 2020. On June 24, 2020, Clarus moved to compel the production of the sixteen documents referred to in Lipocine's May 28, 2020, clawback letter.

## DISCUSSION

"Whether the attorney-client privilege applies should be determined on a case-by-case basis." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981)). The attorney-client privilege is designed to encourage clients to make full disclosure of facts to counsel so that counsel may properly, competently, and ethically represent the clients. *See Idenix Pharm., Inc. v. Gilead Scis., Inc.*, 195 F. Supp. 3d 639, 642 (D. Del. 2016) (citing *In re Impounded*, 241 F.3d 308, 316 (3d Cir. 2001)). The party seeking to withhold materials from discovery bears the burden of demonstrating the applicability of the attorney-client privilege. *Idenix*, 195 F. Supp. 3d at 642. A document is privileged if it reveals "directly or indirectly, the substance of a confidential attorney-client communication." *SmithKline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534 (N.D. Ill. 2000); *see also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct. 12, 2007) ("[The attorney-client privilege] applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)); *In re Spalding*, 203 F.3d at 805.

Clarus contends that "Lipocine has not presented sufficient evidence showing that the challenged communications were made in furtherance of obtaining legal advice." Dkt. No. 131,

at 3. According to Clarus, "the only actual evidence of record shows that the documents were sent between nonlawyers to gather and discuss technical information, not to further any legal analysis or advice." *Id.*

Lipocine responds that its privilege log and witness testimony demonstrate that the clawed back documents were prepared at the direction of counsel and made in furtherance of securing legal advice regarding a draft patent application. Lipocine has also provided the Court with copies of the documents that are the subjects of Clarus's motion to compel, to enable the Court to review those documents *in camera*. To provide the relevant context for those documents, Lipocine also provided other related privileged documents for *in camera* review.

After having reviewed the parties' arguments, the witness testimony, the privilege log, and the documents provided for *in camera* review, I agree with Lipocine that the documents that are the subjects of Clarus's motion to compel are privileged. It is evident from the face of the documents provided for *in camera* review that in May 2012, several Lipocine employees were working with their attorneys to prepare a patent application. Lipocine's attorneys initiated the process at the beginning of May during discussions about another, related patent application. There were extensive communications back and forth between Lipocine and its attorneys as they shaped the new application for presentation to the Patent Office. As part of that process, company scientists collected data in a format provided by counsel for potential inclusion in the patent application. By the end of May, the process of honing the technical specification and claims was complete. Lipocine's counsel then filed the application with the Patent Office on May 31, 2012, and the Patent and Trademark Office eventually granted the application, which issued as the '858 patent.

The documents that are the subjects of Clarus's motion to compel are privileged because they reflect communications between Lipocine and its attorneys relating to the preparation of the patent application that became the '858 patent. *See SmithKline*, 193 F.R.D. at 537; *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, No. C 07-1359, 2009 WL 533124, at *2 (N.D. Cal. Mar. 3, 2009); *Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C04-05385, 2006 WL 3290400, at *1 (N.D. Cal. Nov. 13, 2006). None of Clarus's arguments to the contrary are persuasive.

First, contrary to Clarus's suggestion, the fact that some of the documents may reflect largely technical information does not preclude the assertion of privilege in this case. As the Federal Circuit has explained, the inclusion of technical information does not automatically render a document discoverable, "because requests for legal advice on patentability or for legal services in preparing a patent application necessarily require the evaluation of technical information . . . ." *In re Spalding*, 203 F.3d at 806; *see also Avago*, 2006 WL 3290400, at *1 ("communications from inventor to patent lawyer, even those that are entirely technical, remain presumptively protected by the attorney-client privilege and should be ordered disclosed only on a 'very compelling showing'"). Here, Lipocine collected and submitted technical information to its attorneys in order to secure legal advice regarding the preparation of a patent application. The documents reflecting those communications did not lose their privileged status simply because they contained technical information.

Second, the fact that no attorneys are listed on the face of the documents at issue does not preclude the assertion of privilege in this case. As Clarus concedes, confidential communications between non-attorney employees and inventors may be privileged in certain circumstances. Dkt. No. 131, at 3. In particular, "[c]ommunications shared by non-attorney employees may be

7

privileged if they were made in order to relay information requested by attorneys, or to disseminate legal advice given by those attorneys so that the corporation's employees act appropriately." *King Drug Co. of Florence v. Cephalon, Inc.*, No. 2:06-CV-1797, 2013 WL 4836752, at *8 (E.D. Pa. Sept. 11, 2013) ("the focus of the inquiry is on whether those communications were for the purpose of gathering information necessary for Cephalon's attorneys to render legal advice, or were made in order to disseminate legal advice from those attorneys throughout the company."); *see also Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds."). Here, it is clear from a review of the string of communications between Lipocine and its counsel that the clawed back documents reflected information that was prepared for and sent to counsel to aid in the legal service of prosecuting a patent application. I will therefore not reject Lipocine's privilege claim on the ground that an attorney was not listed on the face of the documents in question.

Clarus's final contention is that several of the clawed back documents are not privileged because they relate to the preparation by Dr. Chidambaram and Dr. Giliyar for the scientific update meeting that was held on May 10, 2012. Those communications, according to Clarus, were made to discuss scientific findings, not to seek legal advice. Dkt. No. 133, at 1–2.

It is true that courts have "held that a document prepared for both legal and non-legal review is not privileged." *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D. Ill. 1990); *see also FTC v. TRW, Inc.*, 479 F. Supp. 160, 163 (D.D.C. 1979), *aff'd*, 628 F.2d 207 (D.C. Cir. 1980) ("When a document is prepared for simultaneous review by non-legal as well as legal personnel, it is not considered to have been prepared primarily to seek legal advice and the attorney-client privilege does not apply."); *Baxter Travenol Labs., Inc. v.*

8

*Abbott Labs.*, No. 84 C 5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987) ("Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged.").

The documents in dispute in this instance, however, were not prepared for the WIH meeting. In May 2012, there were two separate processes occurring at Lipocine. One of those, as noted, was the preparation of a patent application that was eventually filed at the end of the month. The company was also holding regular scientific update meetings during the same period, including the May 10 WIH meeting. The documents that Clarus identifies reflect that Dr. Giliyar asked Dr. Chidambaram to fill in a largely blank form with data that could be sent to Lipocine's patent attorneys. Dr. Giliyar stated that he hoped Dr. Chidambaram could fill in the blanks on the form with some of the data that had already been generated for potential presentation at the WIH meeting. But the full contents of the communication regarding the patent application and the identity of the information that was ultimately submitted to Lipocine's attorneys was not rendered unprivileged simply because there was an expectation that some of the underlying data might be obtained from pre-existing sources. "If an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney." *In re Spalding*, 203 F.3d at 805 (quoting *Knogo Corp. v. United States*, No. 194-79, 1980 WL 39083, at *5 (Ct. Cl. Trial Div. Feb. 16, 1980)). Clarus was entitled to seek discovery regarding the WIH meeting, but was not entitled to obtain access to any privileged communications that might have included data that was copied from materials presented or discussed at that meeting.

Nor was there any waiver of privilege as a result of the May 10, 2012, WIH meeting. The purpose of WIH meetings, as Dr. Chidambaram explained, was to discuss scientific findings. The

participants did not discuss any strategy regarding patent applications, even though there was a patent application being prepared at that time. "[W]hether third-party consultants were in attendance" is thus irrelevant because nobody disclosed confidential attorney-client communications regarding the patent application at the meeting. Dkt. No. 133, at 1 n.1.

In short, the attorney-client privilege bars Clarus from discovering communications that reflect information that was prepared for and sent to counsel to aid in the prosecution of a patent application. The record before me on this motion indicates that all of the disputed documents fall into that category. Accordingly, Clarus's motion to compel is denied.

IT IS SO ORDERED.

SIGNED THIS 7th day of July, 2020

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE