IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIPOCINE INC., <br><br> Plaintiff, <br><br> v. <br><br> CLARUS THERAPEUTICS, INC., <br><br> Defendant. | C.A. No. 19-622 (WCB) |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion by plaintiff Lipocine Inc. to seal certain portions of a Memorandum Opinion and Order recently entered by the Court. Dkt. No. 141. The motion is denied.

### BACKGROUND

The dispute that gave rise to Lipocine's sealing motion involved a claim of attorney-client privilege by Lipocine regarding certain discovery materials. The parties' papers addressing that dispute were filed under seal. I ruled that the materials in dispute were privileged. Dkt. No. 138. In order to avoid inadvertently disclosing sensitive information, I filed the Memorandum Opinion and Order on that issue under seal, but I directed the parties to advise me if the Memorandum Opinion and Order could be unsealed or if any portions of the Memorandum Opinion and Order were so sensitive that they needed to remain sealed. Dkt. No. 139. I explained that if either party wished for any portion of the Memorandum Opinion and Order to remain sealed, that party should explain, with specificity, why sealing that portion or portions of the Memorandum and Order is necessary and justified.

1

In response to that order, Lipocine filed a motion requesting that 11 portions of the Memorandum Opinion and Order remain under seal. Lipocine stated that defendant Clarus Therapeutics, Inc., did not oppose the motion.

Lipocine acknowledges that redaction of a judicial opinion is appropriate only when redactions are "necessary and justified" to protect a party's legitimate interests. Dkt. No. 141, at 1 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). However, Lipocine argues that several passages in the Memorandum Opinion and Order are subject to sealing under that standard and that those passages should remain sealed because they contain information that is "confidential to Lipocine and could harm Lipocine competitively if the information became public." Dkt. No. 141,. at 2.

Lipocine's explanation of why the 11 passages are so sensitive that they need to remain sealed is quite summary. In fact, Lipocine devotes only a single page to explaining why all 11 portions of the order should be redacted.

## DISCUSSION

### A. Governing Legal Principles

The common law recognizes a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also In re Cendant Corp.,* 260 F.3d 183, 194 (3d Cir. 2001); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988); *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1358 (Fed. Cir. 2020); *In re Violation of Rule 28(d)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011). That right is implemented through "a strong presumption of openness" that "does not permit the routine closing of judicial records to the public." *In re Avandia Mktg., Sales Practices and Prods. Liability Litig.*, 924 F.3d 662, 672 (3d Cir. 2019); *see also LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d

216, 220 (3d Cir. 2011); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993); *In re Violation of Rule 28(d)*, 635 F.3d at 1356.

As the Third Circuit explained in *Littlejohn,* the right of access strengthens confidence in the courts:

> The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court. As with other branches of government, the bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

851 F.2d at 678 (citations omitted). Thus, access to the records of court proceedings "promotes 'public respect for the judicial process' and helps assure that judges perform their duties in an honest and informed manner." *Leucadia*, 998 F.3d at 161 (citations and internal quotations omitted).

To be sure, the "right to inspect and copy judicial records is not absolute," *Nixon*, 435 U.S. at 598, and the presumption in favor of public access to court records can be overcome in certain instances. For example, as the Supreme Court recognized in the *Nixon* case, courts have denied public access to court records when necessary to ensure that those records "are not 'used to gratify private spite or promote public scandal,'" or to ensure that court records are not used "as sources of business information that might harm a litigant's competitive standing." *Id.* (citations omitted).

The decision whether to allow public access to court records is left to the "sound discretion of the trial court . . . to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. The exercise of that discretion is not unguided, however. "In determining whether to restrict the public's access to court documents, the court must 'weigh[] the interests advanced by the parties in light of the public interest and the duty of the courts.'" *In re*

3

*Violation of Rule 28(d)*, 635 F.3d at 1357 (quoting *Nixon*, 435 U.S. at 602). And in making a decision as to whether to limit public access to court records, a judge must be cognizant of the fact that public access to judicial records "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *SEC v. Van Waeyenberghe*, 990 F.2d at 845, 849 (5th Cir. 1993); *see also id.* at 850 ("The real focus of our inquiry is on the rights of the public in maintaining open records and the 'check[] on the integrity of the system.'") (quoting *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985)). For that reason, the courts have held that a district court's "discretion to seal the record of judicial proceedings is to be exercised charily," *Van Waeyenberghe*, 990 F.2d at 848, that the court "must use caution in exercising its discretion to place records under seal," *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 689 (5th Cir. 2010), and that the decision to seal or redact public records "must be made in light of the 'strong presumption that all trial proceedings should be subject to scrutiny by the public,'" *id.* at 690 (citation omitted).

Courts have uniformly held that the party seeking to have court documents restricted from public access has the burden of establishing that the presumption of public records should be overcome, and that the burden is a heavy one. *LEAP Sys.*, 638 F.3d at 221–22; *In re Cendant Corp.*, 260 F.3d at 194; *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994); *Publicker Indus., Inc. v Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984); *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004); *United States v. Ladd*, 218 F.3d 701, 704 (7th Cir. 2000). The moving party "can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring

4

disclosure." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013) (citation omitted). In order to do so, however, "the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.*

Specificity in the showing of harm is essential. *In re Avandia*, 924 F.3d at 673; *In re Cendant Corp.*, 260 F.3d at 194; *Pansy*, 23 F.3d at 786; *Publicker*, 733 F.2d at 1071. Lipocine concedes that a showing of "good cause" is necessary to justify an order withdrawing judicial records from the public domain. However, the Third Circuit has defined "good cause" in this context very restrictively; it is not enough simply to articulate some justification for the sealing or redacting of judicial materials. As the court has explained, "'good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. . . . Broad allegations of harm, unsubstantiated by specific examples . . . will not suffice." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see also In re Avandia*, 924 F.3d at 672; *LEAP Sys., Inc.*, 638 F.3d at 222; *Shingara v. Skiles*, 420 F.3d 301, 307 (3d Cir. 2005) (a "broad, unsubstantiated allegation of harm . . . does not support a showing of good cause"); *Pansy*, 23 F.3d at 786 ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.") (quoting *Publicker*, 733 F.2d at 1071).

Finally, the courts have made clear that the interest in ensuring that judicial records remain open to the public applies with special force to judicial opinions. As Judge Garland stated recently, writing for the D.C. Circuit:

> Court decisions are the "quintessential business of the public's institutions." And the issuance of public opinions is core "to the transparency of the court's decisionmaking process." Indeed, at least since the time of Edward III, judicial decisions have been held open for public inspection.

5

*In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) (citations omitted); *see also In re United States for an Order Pursuant to Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013) ("it is commonsensical that judicially authored or created documents are judicial records"); *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny."); *Scott v. City of Sioux City, Iowa*, 96 F. Supp. 3d 898, 907 (N.D. Iowa 2015) ("[T]he public interest in disclosure is particularly strong as to judicial decisions, so that the public understands the rationale of a court's ruling."); *United States v. McCoullum*, No. 2:13-cr-52, 2013 WL 3779154, at *1 (D. Me. July 18, 2013) (denying a motion to seal judicial decision as contrary to the "long-recognized public interest in the accurate reporting and dissemination of judicial opinions); *Schedin v. Ortho-McNeil-Janssen Pharms., Inc.*, Civil No. 08-5743, 2011 WL 1831597, at *4 (D. Minn. May 23, 2011) ("The presumption of public access for court documents is 'especially strong' as it relates to judicial opinions," because judicial precedents are "valuable to the legal community as a whole," and "are not merely the property of private litigants."); *Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998) ("The Court's decisions are adjudications—direct exercises of judicial power the reasoning and substantive effect of which the public has an important interest in scrutinizing."); *McDonough v. Nassau County Bd. Of Co-operative. Educational Servs.*, No. 05-cv-2507, 2008 WL 565511, at *1 (E.D.N.Y. Feb. 29, 2008) ("For a document that 'directly affect[s] an adjudication' of the parties' substantive rights—like a judicial opinion itself—there is a 'strong' presumption of access, and the document should not be placed under seal 'absent the most compelling reasons.'") (citations omitted).

In light of the strong public policies set forth in the cases discussed above, I will not sanction the sealing or redaction of court records, and especially court opinions, if sealing is not justified by a strong and particularized showing of need. As explained below, it is clear to me that no such showing has been made in this case.

**B. Application of the Governing Legal Principles to Lipocine's Motion**

Lipocine's requests for redaction in this case fall into three categories: First, those containing references to Lipocine's counsel; second, those containing references to a data sheet that was to be filled out by Dr. Chidambaram; and third, those containing references to the "WIH meeting" of Lipocine employees.

**1.** As to the first category, Lipocine states in its motion that certain portions of the materials that it seeks to have redacted from the Memorandum Opinion and Order "detail[] Lipocine's communications with counsel, including the frequency to which Lipocine was communicating with counsel and what Lipocine was discussing with counsel." Dkt. No. 141, at 2. Lipocine stops short of asserting that the material in question is subject to the attorney-client privilege, and for good reason: It is not. In drafting the Memorandum Opinion and Order, I was careful not to disclose the contents of any privileged communications; instead, I relied on deposition testimony as to which no claim of privilege was interposed. Moreover, despite the broad characterization that Lipocine now gives to that testimony, the material quoted in the Memorandum Opinion and Order did not disclose any details of the communications between Lipocine and its counsel, nor did it disclose any information that was not already apparent from the portions of the Memorandum Opinion and Order that Lipocine has not sought to have redacted.

Specifically, Lipocine points to two excerpts from the Memorandum Opinion and Order that contain references to counsel. The first is a quotation from the deposition of Dr. Nachiappan

Chidambaram, in which Dr. Chidambaram testified that Lipocine's counsel had been "thoroughly involved to and fro" in preparing the patent application and that counsel "were constantly working with us when we prepared this application, and giving their inputs and directions." Yet the same information is conveyed by other portions of the Memorandum Opinion and Order that Lipocine has not included in its proposed redactions. Thus, portions of the Memorandum Opinion and Order that Lipocine has not asked me to redact disclose that during early 2012 Lipocine was preparing to file a patent application and that Lipocine's patent counsel was working with Lipocine on that application. *See* Dkt. No. 138, at 2 (referring to "the preparation of data sets to be used in a draft continuation-in-part patent application that Lipocine was planning on filing" and noting that certain documents that were ultimately protected as privileged "had been prepared at the request of Lipocine's patent prosecution counsel."). In addition, the Memorandum Opinion and Order quotes deposition testimony by Dr. Chandrashekar Giliyar, which Lipocine has also not requested to be redacted, that he had prepared an attachment to an email to Dr. Chidambaram "based on an explanation from Lipocine's attorney about the required format for the data that was needed for the draft patent application." Dkt. No. 138, at 4. In addition, in another reference to Dr. Giliyar's deposition testimony, which again Lipocine has not asked to be redacted, the Memorandum Opinion and Order notes that Clarus had asked Dr. Giliyar about the source of the data that the Lipocine scientists were collecting to send to Lipocine's counsel "for inclusion in the draft patent application." *Id.*

In light of all of those disclosures, it is clear that the portions of the Memorandum Opinion and Order relating to Lipocine's counsel that Lipocine wishes to have redacted reveal nothing additional of substance regarding the activities of Lipocine's counsel. Dr. Chidambaram's statement that counsel were "thoroughly involved to and fro" and that counsel "were constantly

8

working with us when we prepared this application, and giving their inputs and directions," Dkt. No. 138, at 2, was not only what one would expect of the relationship between a company and its patent counsel in the run-up to filing a patent application, but was apparent from the portions of the Memorandum Opinion and Order discussed above, as to which no request for redaction was made.

Likewise, there is no force to Lipocine's argument that I should redact the statement that the privilege log in this case included "descriptions of dozens of other documents relating to Lipocine's communications with its attorneys regarding the prosecution of the continuation-in-part application as well as its parent application." Dkt. No. 138, at Li4. Lipocine provides no explanation for why that statement discloses anything sensitive. It is clear from the unredacted materials that Lipocine was applying for a patent and was preparing a continuation-in-part application, and that it was doing so with the assistance of counsel. It is entirely to be expected that there will be communications between counsel and client in such settings, and the unprotected materials confirm that there were such communications. Given the absence of any argument as to what specific injury would flow from the passages Lipocine proposes to redact, I reject Lipocine's argument that the subject material should be removed from the public record.

**2.** In addition to the portions of the Memorandum Opinion and Order that refer to Lipocine's counsel, Lipocine seeks redaction of a second set of disclosures. Those consist of certain passages relating to Dr. Giliyar's request that Dr. Chidambaram "fill in most of the required data for the patent application by copying the data from a data set that had been generated for" potential presentation at a Lipocine company meeting, referred to as the "WIH meeting" on May 10, 2012. Dkt. No. 138, at 2; *see also id.* at 4 ("Dr. Giliyar explained that he had requested Dr. Chidambaram to provide certain technical data. He had attached a form to his email that Dr.

9

Chidambaram could fill in with the requested data."); *id*. at 9 ("Dr. Giliyar asked Dr. Chidambaram to fill in a largely blank form with data that could be sent to Lipocine's patent attorneys. Dr. Giliyar stated that he hoped Dr. Chidambaram could fill in the blanks on the form with some of the data that had already been generated for potential presentation at the WIH meeting.").

Again, the context of the redaction requests makes clear the limited nature of the disclosure in the particular portions of the Memorandum Opinion and Order for which Lipocine has requested redaction. The portions that Lipocine has not asked to redact set forth Dr. Chidambaram's testimony describing the preparation of data sets to be used in the continuation-in-part patent application that Lipocine planned to file. Dkt. No. 138, at 2. Dr. Chidambaram testified that Dr. Giliyar asked him to provide data that was needed for inclusion in the draft patent application, and that Dr. Chidambaram responded with the requested data. *Id.* In light of that evidence, it is by no means clear that anything significant is added by the portions of the Memorandum Opinion and Order that Lipocine wishes to have redacted, which are (1) the statement that Dr. Giliyar hoped Dr. Chidambaram "could fill in most of the required data for the patent application by copying from a data set that had been generated" for another purpose (Dkt. No. 138, at 2); (2) the statement that Dr. Giliyar "had requested Dr. Chidambaram to provide certain technical data" and had "attached a form" that Dr. Chidambaram "could fill in with the requested data" (*id*. at 4); and (3) the statement that Dr. Giliyar "asked Dr. Chidambaram to fill in a largely blank form with data that could be sent to Lipocine's patent attorneys," and hoped Dr. Chidambaram "could fill in the blanks with some of the data that had already been generated" for another purpose (*id*. at 9). In any event, Lipocine has not offered any explanation for why the additional disclosures are so highly sensitive that they overcome the strong presumption against withholding judicial records, or portions of them, from public access.

**3.** The third category of disclosures that Lipocine wishes to have redacted entail references to what Lipocine refers to as "the topics of discussion and the attendees at internal Lipocine scientific meetings." Dkt. No. 141, at 2. The full text of Lipocine's justification for that set of redaction requests reads: "What is and is not discussed at internal corporate meetings is considered highly sensitive information by Lipocine and could be used by current or future competitors against Lipocine." *Id.* at 2-3.

The specific references to the meetings that Lipocine wants redacted are the following: (1) that the patent application was not discussed at the "WIH meeting" on May 10, 2012 (Dkt. No. 138, at 3); (2) that the participants did not discuss any "strategy regarding patent applications" at that meeting (*id.* at 10); and (3) that "most of the company (approximately five or six individuals) would be at the [WIH] meetings because the company was small at the time" and that on occasion, "third-party consultants would attend WIH meetings," although normally "Lipocine didn't have any consultants at those meetings" (*id.* at 4–5).

Once again, the context makes clear that the marginal disclosure in the portions of the Memorandum Opinion and Order is minimal and, so far as is apparent, completely insignificant. Certainly nothing in the one-sentence justification given by Lipocine provides an explanation with the requisite clarity and specificity as to why the redactions are of critical importance to Lipocine's operations.

The portions of the Memorandum Opinion and Order that Lipocine has not asked to be redacted explained that the "WIH meetings" were periodic scientific update meetings that Lipocine held at the time. In addition to Dr. William I. Higuchi, a Lipocine founder (and the source of the acronym WIH), several other Lipocine employees would regularly attend those meetings. Dkt. No. 138, at 3. At his deposition, Dr. Chidambaram was asked why he would be presenting data to

be included in a patent application at a meeting with Dr. Higuchi. The following is the ensuing text of the Memorandum Opinion and Order, with the portion Lipocine wishes to be redacted enclosed in brackets:

> In response, Dr. Chidambaram corrected Clarus's counsel, [explaining that the patent application was not discussed at the meeting]. Instead, he said, all that was discussed at the meeting were "scientific findings." The fact that there was work simultaneously being done on a patent application was just a coincidence. Dkt. No. 131-1, at p. 197.

*See also* Dkt. No. 138, at 9 ("The purpose of WIH meetings, as Dr. Chidambaram explained, was to discuss scientific findings."). Subsequently, in a passage as to which Lipocine has not sought redaction, the Memorandum Opinion and Order referred to Dr. Giliyar's testimony that "the data that had been generated for potential presentation at the 'WIH meeting' on May 10, 2012, had, in fact, been presented at that meeting." *Id.* at 4.

From the portions of the Memorandum Opinion and Order as to which Lipocine does not seek redaction, it is clear that the purpose of the WIH meetings in general, and the May 10, 2012, meeting in particular, was to discuss scientific findings, and not to discuss the patent application. That is the point Dr. Chidambaram was making in the portion of the Memorandum Opinion and Order quoted above where he "corrected" Clarus's counsel, who asked why he would be presenting data to be included in a patent application at the WIH meeting, and expanded on that correction by stating that "all that was discussed at the meeting were scientific findings." So, from the portions of the Memorandum Opinion and Order as to which Lipocine does not request redaction, it is clear that the patent application was not discussed at the May 10, 2012, WIH meeting. No purpose would be served by redacting the two portions of the order that make that statement more explicitly.

As for the third point raised by Lipocine—that most of the company would attend the WIH meetings and that consultants would occasionally be present, but normally would not—Lipocine offers no explanation of why such quotidian details would be potentially damaging to Lipocine in the hands of a competitor. While it may well be the case that a company would not want to share everything that occurred in confidential meetings within the company, there is nothing on the face of the disclosures in this case—that members of the company would attend the meetings and consultants ordinarily would not—that would appear to be potentially damaging to Lipocine or of any use whatsoever to a competitor. Thus, the broad assertion of harm, which is all that Lipocine offers in support of its request to redact the three "meeting-related" portions of the Memorandum Opinion and Order, falls far short of satisfying the exacting degree of specificity and strength necessary to overcome the strong presumption in favor of public access to judicial opinions.

Although in this order I have relied heavily on the portions of the Memorandum Opinion and Order as to which Lipocine did not request redaction, I have done so with some reservations because of concern that the lesson the parties will draw is that Lipocine would have been better off by asking that the entire opinion remain sealed. That is not the appropriate take-away. The real problem is that Lipocine's reasons for wanting to redact portions of the Memorandum Opinion and Order are far too weak to stand up in light of the stringent standards that courts for years have imposed in response to requests to seal and redact judicial records. Thus, the result in this case would have been the same without regard to the degree of redaction that Lipocine requested. There is simply nothing in Lipocine's motion that makes a convincing case that anything in the Memorandum Opinion and Order is potentially damaging to Lipocine's legitimate business interests to the degree sufficient to justify denying public access to any portion of the order.

The issue that Lipocine's motion presents is illustrative of a much broader problem: the practice of counsel in complex civil cases using the sealing privilege excessively, without careful consideration of whether it is appropriate in particular instances. The problem for judges is that such requests are seldom opposed—the would-be opposing party has access to the materials and doesn't particularly care whether the public has access as well. Worse, the would-be opposing party frequently hopes to be able to use the sealing mechanism itself and therefore understands that consenting to a motion to seal is the best way to maximize the chance that it will be able to use the sealing mechanism without resistance when its turn comes up.[1]

That leaves the judge in the position of having to decide a sometimes complex issue of sealing or redaction with no adversarial briefing and often, as in this case, with only a perfunctory submission from the party seeking relief. Frequently, judges find it is simpler not to resist the seemingly unquenchable desire on the part of litigants and their counsel to maintain the highest possible degree of secrecy as to the circumstances underlying the litigation, and ultimately as to the litigation proceedings themselves. Although I have often inveighed against the over-use of sealing, redaction and courtroom closings,[2] I confess that I have sometimes found that it is simply

---

[1] That is one of the reasons courts have disregarded agreements between the parties with respect to sealing or redacting judicial records. *See Alexsam, Inc. v. MasterCard Int'l Inc.*, No. 15-cv-2799, 2017 WL 9750837, at *2 (E.D.N.Y. Mar. 13, 2017) ("Clearly, an agreement by the parties to a litigation is an insufficient basis, by itself, to warrant sealing or redaction of a judicial opinion."). As one court put the matter, "the presumption of public access would become virtually meaningless if it could be overcome by the mutual interest of the parties." *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012); *see also Spire, Inc. v. Cellular S., Inc.*, Civil Action No. 17-266, 2017 WL 11512582, at *2 (S.D. Ala. Dec. 22, 2017); *Jackson v. Deen*, No. CV412-139, 2013 WL 911445, at *1 n.6 (S.D. Ga. May 8, 2013).

[2] *See, e.g., Erfindergemeinschaft UroPep, GbR v. Eli Lilly & Co.*, Case No. 2:15-cv-1202, 2017 WL 434207 (E.D. Tex. Feb. 1, 2019); *Script Security Solutions, LLC v. Amazon.com, Inc.*, Case No. 2:15-cv-1030, 2016 WL 7013938 (E.D. Tex. Dec. 1, 2016); *Robroy Indus.-Tex., LLC v Thomas & Betts Corp.*, Case No. 2:15-cv-512, 2016 WL 325174 (E.D. Tex. Jan. 27, 2016); *Trover Group, Inc. v. Dedicated Micro USA*, Case No. 2:13-cv-1047, 2015 WL 1406259 (E.D. Tex. Mar. 26, 2015); *Kroy IP Holdings, LLC v. Safeway, Inc.*, Case No. 2:12-cv-800, 2015 WL 432012 (E.D. Tex. Feb. 2, 2015); *Bianco v. Globus Medical, Inc.*, Case No. 2:12-cv-147, 2014 WL 3422000

too difficult to police parties' submissions in detail and have not been as vigilant about sealing and redaction requests as I should have been. Because the policing process is so time-consuming, and because judges have limited access to information that is often important in evaluating claims of confidentiality, the responsibility ultimately falls on counsel to police themselves and to instruct their clients that judges often do not respond well to unreasonable efforts to keep as much out of the public record as possible. At least not this judge.

Judge Andrews has made these points better than I could. His words on the subject are so distinctly on point that they deserve quoting at length:

> In my experience, corporate parties in complex litigation generally prefer to litigate in secret. To that end, discovery is over-designated as being confidential, pleadings and briefs are filed under seal, redacted versions of sealed documents are over-redacted, requests are made to seal portions of transcripts of judicial proceedings, and parties want to close the courtroom during testimony. I have tried over the years to rein these tendencies in, but it is difficult because there is usually no one opposing whatever requests are made, and I do not have time to be independently monitoring any of these tendencies unless they are directly requested of me (i.e., requests to close the courtroom and to seal judicial transcripts). I have made some efforts on the requests that are specifically directed to me. I think some of those efforts have resulted in greater exercise of discretion by the parties in asking to have judicial transcripts sealed and in seeking to close the courtroom, but I do not see any impact on any of the other areas of potential abuse.

*Takeda Pharms., Inc. v. Mylan Pharms., Inc.*, Civil Action No. 19-2216, 2019 WL 6910264, at *1 (D. Del. Dec. 19, 2019).

Quoting Judge Andrews' opinion in *Takeda*, Judge Connolly expressed similar views in *In re Application of Storag Etzel GmbH*, Misc. No. 19-mc-209, Dkt. No. 40 (D. Del. Jan. 23, 2020). Like Judge Andrews, Judge Connolly found that "parties in my civil cases routinely ask to seal pleadings that cannot reasonably be characterized as disclosing confidential or proprietary information." He added that he could not recall "a party in a civil case opposing a request to seal

---

(E.D. Tex. July 14, 2014).

or objecting to the scope of redactions in the public version of a pleading that was filed pursuant to an order that granted a motion to seal." *Id.* at 1–2.

Judge Connolly explained that he encounters three problems when presented with unopposed motions to seal:

> First, it falls solely on me to scrutinize the proffered justification for the motion without the benefit of the industry knowledge that is often necessary to determine if a clearly defined and serious injury would result if I denied the motion. Second, if I grant the motion—and I almost always do—it falls solely on me to scrutinize the redactions in the movant's subsequently filed public version of the pleading. Here again, I lack industry knowledge to guide me in assessing whether the proposed redactions are necessary to avoid a clearly defined and serious injury. Third, because of my caseload, I lack time.

*Id.* at 2.

### C. Remedy

In *Takeda*, Judge Andrews framed an order that was addressed to the problem in that case by directing that "no further filings may be made under seal in this case unless contemporaneously accompanied by the proposed redacted version and a detailed affidavit of the filing party that meets the *Avandia* standard for sealing court filings." 2019 WL 6910264, at *2. At this time, I am not prepared to adopt such an order. However, if the parties are not more cautious about seeking to seal materials in this case in the future, I will consider doing so.

I note that the parties made extensive redactions to the public versions of the sealed filings that led to my ruling on the attorney-client privilege issue. *See* Dkt. Nos. 134, 135, 137. I have examined those redactions. While some of the redactions appear to be justified, others seem both unjustified and inconsistent with the requested redactions set forth in Lipocine's motion to seal the Memorandum Opinion and Order.[3] In any event, the public versions of those filings must be

---

[3] For example, in the redacted version of its letter filed in support of its argument on the attorney-client privilege issues, Dkt. No. 135, Lipocine redacted all references to William I. Higuchi and the fact that he was one of the founders of Lipocine. *Id.* at 2. However, in its Motion

16

redone in light of this order. The parties are directed to revisit the redactions of the letters filed on the attorney-client privilege issue and refile redacted versions of those letters (or versions without redactions) within seven days of the date of this order.

As for future submissions of sealed or redacted materials by the parties or requests that court orders or opinions be sealed or redacted, I direct all counsel of record in this case to familiarize themselves with the cases cited in this order and to refrain from requesting such relief unless the standards set forth in those cases are satisfied.

The motion to redact the Memorandum Opinion and Order, Dkt. No. 138, is denied. The Clerk will be directed to unseal the Memorandum Opinion and Order.

---

to Seal Memorandum Order, Dkt. No. 141, Lipocine did not seek to redact references to Mr. Higuchi or his role in the company from the court's Memorandum Opinion and Order.

IT IS SO ORDERED.

SIGNED this 7th day of August, 2020

_____
WILLIAM C. BRYSON
UNITED STATE CIRCUIT JUDGE