## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LIPOCINE INC.,

        Plaintiff,

    v.

CLARUS THERAPEUTICS, INC.,

        Defendant.

C.A. No. 19-622 (WCB)

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Clarus Therapeutics, Inc., has filed a motion for leave to file a Second Amended Answer, Affirmative Defenses, and Counterclaims ("Second Amended Answer"). Dkt. No 145.  In turn, plaintiff Lipocine Inc. has filed a motion to strike portions of Clarus's final invalidity contentions and expert reports regarding inequitable conduct, patent misuse, and indefiniteness.  Dkt. No. 148.  The parties presented oral argument on both motions at a telephonic hearing held on August 17, 2020.  Clarus's motion is GRANTED, and Lipocine's motion is DENIED.

## BACKGROUND

The dispute before the Court focuses on Clarus's effort to add new allegations, both in its Second Amended Answer and in its final invalidity contentions, relating principally to alleged inequitable conduct by Lipocine in obtaining the patents-in-suit, U.S. Patent Nos. 9,034,858 ("the '858 patent"); 9,205,057 ("the '057 patent"); 9,480,690 ("the '690 patent"); and 9,757,390 ("the '390 patent").

The scheduling order in this case required any amendment to the pleadings to be filed by January 17, 2020.  Clarus filed its original Answer, Affirmative Defenses, and Counterclaims, Dkt. No. 6, and its Amended Answer, Affirmative Defenses, and Counterclaims ("First Amended Answer"), Dkt. No. 21, before that date.

In its First Amended Answer, Clarus denied Lipocine's allegations of infringement of each of the asserted patents.  In addition, Clarus asserted as defenses that each of the

asserted patents was invalid on various grounds, including anticipation, obviousness, and failure to satisfy the requirements of 35 U.S.C. § 112.  With respect to certain of the patents, Clarus also asserted the defenses of obviousness-type double patenting and failure to satisfy the requirements of 35 U.S.C. § 101.  Clarus also asserted counterclaims, seeking a declaratory judgment of noninfringement and invalidity of the '858, '057, '690, and '390 patents.  Finally, Clarus pleaded as a counterclaim that Lipocine had not made a good faith inquiry into its allegations against Clarus for infringement of all six asserted patents; that Lipocine had no objectively reasonable basis for charging Clarus with infringement of any of those six patents; and that the action should be deemed an exceptional case within the meaning of 35 U.S.C. § 285.  Clarus did not allege, either its original answer or its First Amended Answer, that any of the patents were unenforceable for inequitable conduct.

In the course of fact discovery, Clarus conducted depositions of certain fact witnesses during the spring of 2020, concluding with the deposition of co-inventor Dr. Mahesh Patel on June 3 and 4, 2020.  Clarus claims that in the course of that discovery it uncovered and confirmed evidence of inequitable conduct on Lipocine's part during the prosecution of the patents-in-suit.

Several pertinent events occurred during late June and July 2020 following Dr. Patel's deposition on June 3-4:

First, on June 24, 2020, Clarus moved to compel production of certain documents as to which Lipocine had claimed the attorney-client privilege during the discovery process. Dkt. No. 131. I denied Clarus's motion on July 7, 2020. Dkt. No. 138.

Second, Clarus served its final invalidity contentions on Lipocine on July 3, 2020, the deadline set in the court's scheduling order. Clarus's invalidity contentions contained a lengthy and detailed recitation of Clarus's allegations that Lipocine's representatives had committed inequitable conduct during the prosecution of the patents-in-suit. *See* Dkt. No. 149-2, at 195–219.

Third, on July 15, 2020, Lipocine objected to the inclusion of the inequitable conduct allegations in Clarus's final invalidity contentions. Dkt. No. 149-5. Lipocine pointed out that a claim of unenforceability must be pleaded; because inequitable conduct was not pleaded in Clarus's First Amended Answer, Lipocine requested that Clarus withdraw its inequitable conduct defense, or Lipocine would move to strike it from Clarus's final invalidity contentions. *Id.*

Fourth, later on July 15, 2020, Clarus served on Lipocine a redline version of Clarus's proposed Second Amended Answer, which contained Clarus's allegations of inequitable conduct. Clarus sought Lipocine's consent to a motion to file that amended pleading with the Court. The parties conducted a meet-and-confer on Clarus's motion on July 24, 2020. Lipocine did not consent to the filing.

Fifth, on July 17, 2020, Clarus served the expert reports of Dr. David R. Taft and Dr. John K. Amory. Both of those reports addressed inequitable conduct in some detail.

Sixth, on July 28, 2020, Clarus filed the present motion for leave to file its Second Amended Answer. The proposed Second Amended Answer added affirmative defenses of inequitable conduct and patent misuse. In addition, it added a counterclaim of unenforceability based on inequitable conduct and a counterclaim seeking a declaration of patent misuse. Dkt. Nos. 145, 145-2. Lipocine filed an opposition to the motion, Dkt. No. 146, and Clarus filed a reply, Dkt. No. 149.

On August 4, 2020, while the motion for leave to file the second amended answer was being briefed, Lipocine filed its motion to strike certain portions of Clarus's final invalidity contentions and expert reports. Dkt. No. 148. Clarus filed a response to that motion, Dkt. No. 156, and Lipocine filed a reply, Dkt. No. 166.

## DISCUSSION

### A. Clarus's Motion to File an Amended Answer and Counterclaims

The issue presented by Clarus's motion has arisen frequently in this district and others. The general fact pattern in each of these cases is essentially the same: the plaintiff alleges infringement; the defendant responds with an answer and counterclaims denying infringement and asserting patent invalidity; then, in the course of discovery, the defendant develops evidence that the defendant believes supports a theory of unenforceability because of inequitable conduct. The defendant then seeks to amend its answer and counterclaims to add a defense and counterclaim of unenforceability. Often that occurs after the deadline for amending the pleadings that was set forth in the court's scheduling order. The court is then required to determine whether to permit the amendment and allow the issue of inequitable conduct into the case. While the general pattern is similar from case to case, the particular facts vary widely, leading to differences in the courts' dispositions of the motions.

The legal issue presented by Clarus's motion to amend is framed by Rules 15(a)(2) and 16(b)(4) of the Federal Rules of Civil Procedure.  Rule 15(a)(2) provides that, other than in the limited circumstances in which a party may amend a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  The rule further provides that "[t]he court should freely give leave when justice so requires."  Courts have interpreted that language as establishing a liberal policy in favor of allowing amendments.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1980).  As the Third Circuit has explained, "[a]bsent undue or substantial prejudice . . .  denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment."  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (quoting *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1196 (3d Cir. 1994)).

If a motion to amend satisfies Rule 15, but the motion is filed after the date set for amendments under a scheduling order, the moving party must also satisfy Rule 16(b)(4).  *See E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000).  Rule 16(b)(4) provides that "[a] schedule maybe modified only for good cause and with the judge's consent."  While Rule 15(a)(2) focuses on the question of prejudice to the non-moving party, Rule 16(b)(4) "focuses on the moving party's burden to show due diligence."  *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *see also WebXchange Inc. v. Dell Inc.*, C.A. No. 08-132, 2010 WL 256547, at *2 (D. Del. Jan. 20, 2010) ("In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party."); *Roquette Freres v. SPI Pharma, Inc.*, C.A. No. 06-540, 2009 WL 1444835, at

*4 (D. Del. May 21, 2009) ("The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner."). Thus, good cause is established if the amendment is not unduly delayed, i.e., if the movant shows that it acted diligently in filing its motion to amend. If the movant satisfies that requirement of Rule 16, leave to amend should be granted unless there is a reason to deny leave, such as bad faith, prejudice to the non-moving party, or futility of the claims. *Foman v. Davis*, 371 U.S. at 182; *In re Burlington*, 114 F. 3d at 1434.

Lipocine argues that Clarus's motion should not be granted, because the proposed amendment (1) was untimely; (2) would prejudice Lipocine; and (3) would be futile. I disagree with Clarus's contentions on each of those points.

### 1. Undue Delay

The burden of proving inequitable conduct is a heavy one. In *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc), the Federal Circuit held that a party seeking to prove inequitable conduct must show, by clear and convincing evidence, that the patent applicant acted with the specific intent to deceive the PTO and that the applicant's actions were material, i.e., that they resulted in the issuance of a patent that otherwise would not have issued. The Federal Circuit has also held that a claim for inequitable conduct must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that in alleging fraud a party must "state with particularity the circumstances constituting fraud." *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). In particular, the Federal Circuit has explained, "to plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at

1328.  The pleading "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Id.* at 1328–29.

Because it is often the case that the critical evidence necessary to prove inequitable conduct can be obtained only from the patentee, it is common for claims of inequitable conduct to arise only after discovery has been conducted.  In many instances, as in this case, fact discovery is not completed until after the deadline for amending pleadings.  For that reason, and given the high pleading and evidentiary hurdles facing a party who wishes to assert inequitable conduct, the party often finds itself seeking leave to add a claim of inequitable conduct after the date for amending pleadings has passed, and frequently after the close of fact discovery.

In light of the high standards of pleading and proof for inequitable conduct claims, courts in this district have regularly held that it is not unreasonable for patent challengers to postpone raising allegations of inequitable conduct until sufficient discovery has been conducted to enable the challenger confirm its suspicions and gather the evidence necessary to sustain its claim.  *See L'Oreal S.A. v. MSD Consumer Care, Inc.*, Civil Action No. 12-99, 2014 WL 12929551, at *1 (D. Del. Sept. 18, 2014) ("Because inequitable conduct must be pled with particularity, parties will often not possess the necessary information to substantiate such a claim until discovery is taken."); *Evonik Degussa GmbH v. Materia Inc.*, Civil No. 09-636, 2011 WL 13152274, at *3 (D. Del. Dec. 13, 2011) (depositions "confirmed plaintiff's suspicions and provided the factual support plaintiff needed to amend its counterclaim.  Plaintiff should not be penalized because it prudently waited to obtain key deposition testimony before filing its proposed amendment."); *Roquette Freres*, 2009 WL 1444835, at *5 ("in light of the pleading with particularity

requirement under Rule 9(b), it was appropriate for SPI to confirm the factual allegations through discovery"); *ICU Med.*, *Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 578 (D. Del. 2009) ("Where inequitable conduct claims are made, the pleading party is 'possibly required to confirm the factual allegations through discovery.") (quoting *Roquette Freres*, 2009 WL 1444835, at *5); *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 372 (D. Del. 2009) (the defendant "filed its amendment shortly after it was able to satisfy the pleading requirements of Rule 9(b)); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003) ("[S]ince the Rule 9(b) 'pleading with particularity' requirement is implicated with regard to an inequitable conduct claim, Digene was prudent and possibly required to confirm the factual allegations through discovery."); *see also Eisai Co. v. Teva Pharms. USA, Inc.*, 247 F.R.D. 445, 449 (D.N.J. 2007) (Because "allegations of inequitable conduct are serious," a defendant is not required to plead inequitable conduct upon first developing evidence of such a claim, but is allowed to seek to confirm the evidence and "fully synthesize the information available to it before filing a motion to amend.").

As in those cases, it would not be reasonable to require that Clarus have sought leave to add its inequitable conduct claims before the end of fact discovery, which concluded with the depositions of the inventors and representatives of Lipocine, including Dr. Patel.  In light of the high standards of pleading and proof for claims of inequitable conduct and the fact that in this case, as in many cases, the most important evidence of inequitable conduct is in the possession of the patentee, it was not unreasonable for Clarus to seek to confirm its allegations of inequitable conduct during fact discovery before formally pleading inequitable conduct.  To be sure, it is not possible at this juncture, based solely on Clarus's allegations, to make a definitive determination as to whether the evidence of inequitable conduct in Clarus's hands as of January 17, 2020, was

so compelling that Clarus was required to amend its answer by that date.   However, I am persuaded that Clarus cannot be faulted for waiting until it had obtained additional evidence before seeking to amend its answer and counterclaims. A rough measure of the significance of evidence obtained after the January 17, 2020, deadline for amending pleadings is provided by an examination of Lipocine's annotations of the Second Amended Answer, Dkt. No. 147-5.  For 94 of Clarus's inequitable conduct allegations, Lipocine has identified the date on which the corresponding evidence was produced to Clarus.   Of those 94 entries, 31 refer to evidence obtained after January 17, 2020, and another 29 refer to evidence that was produced to Clarus on January 10, 2010, only a week before the January 17 deadline.  Lipocine's own exhibit thus casts doubt on its assertion that Clarus had a sufficiently complete evidentiary picture of its inequitable conduct theory by January 17, 2020, that it was obligated to amend its answer by that date.

Given that a claim of inequitable conduct requires proof of specific intent to deceive on the  part of the applicants or their representatives, it is hardly surprising that responsible defense counsel would wish to depose those individuals before charging them with deceptive intent. Moreover, after examining Clarus's inequitable conduct allegations, which rely to a significant degree on testimony from the Lipocine deponents, I am satisfied that Clarus was justified in postponing its motion to amend until after it was able to conduct depositions of the inventors and Lipocine's patent agent.[1]   For that reason, I conclude that Clarus was not guilty of lack of

---

[1]  In that respect, this case differs from *Ingevity Corp. v. BASF Corp.*, Civil Action No. 18-1391, 2020 WL 1329604 (D. Del. Mar. 23, 2020), in which the district court adopted the magistrate judge's recommendation to deny an out-of-time motion to add a defense of inequitable conduct.  *Id.* at *3.  In the *Ingevity* case, the magistrate judge noted that it was clear that, prior to the deadline for amending pleadings, the defendant was already in possession of the evidence that supported the inequitable conduct allegations in the amended answer.  *See* Civil Action No. 18-1391, Dkt. No. 147, at 24–25.  The record materials before me in this case do not support such a finding.

diligence during the period between January 17, 2020, and the conclusion of Dr. Patel's deposition on June 4, 2020.

In determining whether Clarus exercised due diligence in seeking to amend its answer, it is next necessary to examine the period of delay between the end of Dr. Patel's deposition, on June 4, 2020, and the filing of Clarus's motion to amend, on July 28, 2020. Because it is undisputed that Clarus had all the evidence on which it intended to rely for its inequitable conduct claim by June 4, 2020, the question is whether it was reasonable for Clarus to wait until July 28, 2020, to file its motion to amend, or whether that period of delay reflects a lack of diligence.

When a party seeking to raise inequitable conduct has not been diligent in requesting leave to amend its answer, that is typically a sufficient reason by itself for the court to deny the request to amend. Thus, delays in filing motions to amend pleadings have been held "undue" when the delays were lengthy, such as three years, *see USX Corp. v. Barnhart*, 395 F.3d 161, 167–68 (3d Cir. 2004), or two years, *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 2003).

Specifically, courts in this district have found delay to be undue when the motion to amend was filed after the deadline for amending and the period of delay was three months or more from the time the defendant obtained critical information relating to an inequitable conduct claim to the date the motion to amend was filed. *See Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 366–70 (D. Del. 2006) (delay of more than two years); *Carrier Corp. v. Goodman Global, Inc.*, 49 F. Supp. 3d 430, 433 (D. Del. 2014) (seven-month delay); *Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417 (D. Del. 2011) (four-month delay); *Pfizer Inc. v. Sandoz Inc.*, C.A. No. 12-654, 2013 WL 5934635, at *3–*4 (D. Del. Nov. 4, 2013) (four-month delay); *Genentech, Inc. v. Amgen, Inc.*, Civ. No. 17-1407, 2020 WL 708113, at *1

(D. Del. Feb. 12, 2020) (nearly three-month delay between the time the defendant had all the evidence it needed to plead inequitable conduct and the date the defendant moved to amend).

By contrast, shorter periods of delay in filing a motion to add inequitable conduct claims after critical information was obtained have been held not to constitute "undue delay." *See, e.g.*, *Evonik,* 2011 WL 13152274, at *3 (delay of slightly more than two months after the critical depositions not undue); *Enzo Life Sciences,* 270 F. Supp. 2d at 489 (delay of six weeks after important deposition not "undue"); *Roquette Freres*, 2009 WL 1444835, at *5 (delay of six weeks after important depositions not "undue"); *Helios Software, LLC v. Awareness Techs., Inc.,* C.A. Nos. 11-1259 et al., 2013 WL 6773658, at *1 (D. Del. Dec. 19, 2013) (delay of one month not undue); *Leader Techs., Inc. v. Facebook, Inc.*, Civil Action No. 08-862, 2010 WL 2545959, at *4–*5 (D. Del. June 24, 2010) (delay of one month after relevant deposition); *BigBand Networks, Inc. v. Imagine Commc'ns, Inc.*, Civil Action No. 07-351, 2010 WL 2898286, at *1 (D. Del. July 20, 2010) (delay of 24 days after the relevant depositions); *Galderma Labs. Inc. v. Amneal Pharms., LLC*, C.A. No. 11-1106, 2013 WL 5461611, at *1 (D. Del. Sept. 30, 2013) (delay of 23 days after relevant deposition).

In this case, the period of delay between the end of Dr. Patel's deposition on June 4, 2020, and the filing of Clarus's motion to file its Second Amended Answer on July 28, 2020, was 54 days.  While the period of delay in this case is somewhat longer than the periods that have been held not to constitute undue delay in most of the cases cited above, it is not as long the period of delay found to be undue in any of the cases cited by Lipocine.  Moreover, there are several mitigating factors that weigh against considering that 54-day period to constitute undue delay.

First, through its final invalidity contentions, Clarus informed Lipocine on July 3, 2020, that it intended to press its defense and counterclaim of inequitable conduct.  Lipocine asserts that the inequitable conduct allegations were "buried" in the final invalidity contentions, but that is manifestly untrue.  The inequitable conduct allegations are set forth at length in the final invalidity contentions; in fact, the inequitable conduct allegations occupy 25 pages of the 220 pages of textual discussion of the invalidity contentions.  The inequitable conduct allegations could not have been overlooked, even on a casual perusal of that document.  And, in fact, it is clear that Lipocine did not overlook those allegations, as Lipocine wrote Clarus on July 15, 2020, to protest the inclusion of the inequitable conduct allegations in the final invalidity contentions. Dkt. No. 149-5.

Second, Clarus argues that the litigation over its June 24, 2020, motion seeking to obtain access to certain materials as to which Lipocine had asserted the attorney-client privilege justified at least some portion of the delay in filing the motion to amend.  It may be that obtaining those materials would have been helpful to Clarus, and that Clarus was justified in waiting briefly to see if those materials would become available it.  However, I denied Clarus's motion on July 7, 2020, so the pendency of that motion had, at most, only a modest effect on the period of delay in filing the motion to amend.

Third, and more importantly, on July 15, 2020—approximately six weeks after Dr. Patel's deposition and 12 days after the service of Clarus's invalidity contentions—Clarus served on Lipocine a copy of its proposed Second Amended Answer, which contained the new allegations of inequitable conduct and patent misuse.  The service of that document indisputably gave Lipocine notice of Clarus's intention to seek to add inequitable conduct and patent misuse allegations to the case.  Clarus sought Lipocine's consent to file the Second Amended Answer,

but following a meet and confer on July 24, 2020, Lipocine declined to consent.  Four days later, Clarus filed its motion to amend.

Thus, although the period of delay between the conclusion of Dr. Patel's deposition and the filing of the motion to amend was 54 days, the notice function of the motion to amend was served long before the motion was filed—less than a month after the completion of Dr. Patel's deposition.  Given that Lipocine had at least constructive notice of Clarus's intention to add an inequitable conduct claim to the case within a month of the close of discovery and was served with a copy of Clarus's proposed second amended answer and counterclaims within six weeks of the close of discovery, it is appropriate to consider the period of delay in this case to be between one month and six weeks.

It appears to be the case that Clarus could have expedited at least somewhat the drafting and filing of its motion to amend by filing it either contemporaneously with its final invalidity contentions or shortly thereafter.  However, for the reasons set forth above, I do not find that the delay during some portion of the month of July was undue.  In addition, in light of Clarus's serving its invalidity contentions within a month of the close of fact discovery, I do not find that Clarus acted in bad faith or with a dilatory motive.  I therefore conclude that, even though Clarus might have been able to expedite the drafting and filing of its motion to amend to a greater degree than it did, the filing was not unduly delayed, and the motion to amend should not be denied for that reason.

### 2. Undue Prejudice

The burden of proof on the issue of prejudice under Rule 15(a)(2) is on the non-moving party, in this case Lipocine.  *See Kiser v. Gen. Elec. Co.*, 831 F.2d 423, 427–28 (3d Cir. 1987); *Masimo Corp. v. Philips Elec. N. Am. Corp.*, C.A. No. 09-80, 2014 WL 4365191, at *5 (D. Del.

Sept. 2, 2014); *Aerocine AB v. Apieron Inc.*, Civ. No. 08-787, 2010 WL 1225090, at *7 (D. Del. Mar. 30, 2010). Lipocine argues that it has met that burden, because it has shown that it would be prejudiced if the motion to amend were granted, principally because it would be denied the opportunity to address the issue of inequitable conduct in its expert reports, which have already been prepared and served.

Lipocine's argument regarding prejudice is unpersuasive. Lipocine has been on notice of Clarus's intent to pursue an inequitable conduct claim since at least July 3, 2020, when Clarus served its final invalidity contentions. Although Lipocine's position is that inequitable conduct was not in the case at that time, because Clarus had not moved to amend its answer and counterclaims, Lipocine was clearly on notice that Clarus intended to raise the issue, and it would have been prudent for Lipocine to prepare for the possibility that I would grant a motion to amend by Clarus's to add the issue to the case. That point was underscored on July 15, 2020, when Clarus served its proposed Second Amended Answer on Lipocine. Thus, the inequitable conduct issue did not come as a surprise to Lipocine on July 28, 2020, when Clarus filed its motion to amend.

Rather than seek a prompt resolution of the issue, which Lipocine could have done by moving to strike the inequitable conduct portion of Clarus's invalidity contentions shortly after they were served on July 3, 2020, Lipocine waited until July 15, 2020, to advise Lipocine by email that inequitable conduct could not be raised unless it was pleaded. *See* 35 U.S.C. § 282(b). Even then, Lipocine did not move to strike the inequitable conduct allegations from Clarus's invalidity contentions. In fact, Lipocine did not make such a motion until a week after Clarus moved to amend, on July 28, 2020. Thus, Lipocine allowed more than a month to go by without seeking a resolution that could have clarified whether it needed to address the inequitable

conduct issue in its expert reports.  Lipocine's failure to take prompt steps to resolve the issue cuts against its claim of prejudice.

Nor has Lipocine made a persuasive case that it has been prejudiced in any other way by Clarus's raising the issue of inequitable conduct at this point in the litigation.  Typically, the plaintiff in an inequitable conduct dispute has access to all the information that is pertinent to its case: the issues of intent and materiality ordinarily turn on evidence in the patentee's possession and do not require factual discovery.  For that reason, courts have noted that the loss of an opportunity for discovery on inequitable conduct typically does not result in prejudice to the patentee.  *See Butamax Advanced Biofuels LLC v. Gevo, Inc.*, Civ. No. 11-54, 2013 WL 571801, at *3 (D. Del. Feb. 2, 2013) ("The court is not convinced that plaintiff will be prejudiced by this amendment.  As defendant points out, 'the inequitable conduct analysis concerns Butamax's conduct in prosecuting its own patents' and the actions and knowledge of its own scientists. . . . Information regarding its own inequitable conduct lies largely with the plaintiff.");" *Leader Techs.*, 2010 WL 2545959, at *6 ("Given that Facebook's inequitable conduct claim is largely premised on documents already within Leader's control, and on the testimony of the patent's inventors, the Court concludes that Leader will not be unduly prejudiced by Facebook's proposed amendment."); *Cordance Corp.*, 255 F.R.D. at 373 (no prejudice from amendment after the close of fact discovery because "the availability of the information regarding inequitable conduct is primarily within the control of [the patentee]"); *Roquette Freres*, 2009 WL 1444835, at *5 ("Information regarding the inventors' knowledge and what they did or did not do regarding the patent specification and their representations to the PTO would primarily be within the control of [the plaintiff]."). That appears to be the case here, as Lipocine has not suggested

any discovery that it would have taken, but did not, because of its lack of notice of Clarus's intention to raise the issue of inequitable conduct.

With that said, there is at least some potential disadvantage to Lipocine from having lost the opportunity to file an expert report or reports on inequitable conduct. And, as indicated, the fault for the loss of that opportunity cannot be laid entirely at Lipocine's feet, given Clarus's delay in filing its motion to amend. And although it might well have been wise for Lipocine to include material addressing inequitable conduct in its rebuttal expert reports in response to Clarus's expert reports, which were served on July 17, 2020, it is understandable that Lipocine may not have wished to devote resources to that enterprise when it was not clear whether the issue of inequitable conduct would be allowed into the case.

Under the circumstances, the fairest way to proceed is to allow Lipocine to serve a supplemental rebuttal expert report or reports out of time, followed by an opportunity for Clarus to conduct expert discovery with regard to those reports, both limited to the inequitable conduct issue. Such a measure is not unfair to Clarus and need not be unduly disruptive to the pretrial schedule. It is important to note that inequitable conduct is an equitable claim that is triable to the court, not to the jury. *See PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000); *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993). Because the inequitable conduct issue is not tied to the other, jury-triable issues in the case, it is possible to give Lipocine that opportunity without interfering with ongoing proceedings relating to the jury-triable issues in the case. I will therefore amend the scheduling order to allow Lipocine that opportunity. *See Masimo Corp.*, 2014 WL 4365191, at *5; *Intervet Inc. v. Boehringer Ingelheim Vetmedica, Inc.*, C.A. No. 11-595, 2012 WL 4808427, at *2 (D. Del. Oct. 9, 2012). Almost six months remain in the schedule before the trial in this

case, which should be ample to ensure that each side has a fair chance to prepare its case both for those portions of the case that are triable to the jury and those portions that are triable to the Court.  Accordingly, the scheduling order will be modified as follows: Lipocine will be given until September 14, 2020, to serve supplemental rebuttal expert reports limited to inequitable conduct.  Clarus will be given until September 24, 2020, to serve supplemental reply expert reports, also limited to inequitable conduct.  Expert discovery limited to those supplemental reports will be extended to October 14, 2020.  Any *Daubert* motions directed to those supplemental reports or summary judgment motions directed to the issue of inequitable conduct will be due for filing by October 21, 2020.  All other deadlines in the scheduling order will remain unaffected.

### 3. Futility

Finally, Lipocine argues that the motion to amend should be denied because it is futile. Given the exacting standards required to prove inequitable conduct, Lipocine contends that Clarus's allegations fall short of what is required to survive a motion to dismiss.  As such, Lipocine argues that it would be pointless to allow Clarus to amend its answer and counterclaims to assert a defense and counterclaim of inequitable conduct, and that the motion to amend should be denied for that reason.

"In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)" of the Federal Rules of Civil Procedure.  *In re Burlington*, 114 F.3d at 1434.  That same standard applies to claims that a pleading of inequitable conduct is futile. *The Medicines Co. v. Teva Parenteral Medicines, Inc.*, C.A. No. 09-750, 2011 WL 13135647, at *14 (D. Del. Aug. 26, 2011); *ICU Med.,* 674 F. Supp. 2d at 579.

A claim of inequitable conduct sounds in fraud.  For that reason, as noted, a patent challenger who seeks to raise inequitable conduct as a defense or a counterclaim is required to meet the heightened standard of pleading set forth in Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party to "state with particularity the circumstances constituting fraud."  Lipocine argues that Clarus's proposed amendment does not set forth the particular factual bases for the allegations underlying the inequitable conduct claim.

Citing the Federal Circuit's opinion in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), Lipocine contends that Clarus's pleading does not identify the specific "what," "where," and "how" of the alleged inequitable conduct such that a reasonable inference could be drawn in Clarus's favor.  Dkt. No. 147, at 4.  In response, Clarus argues that its inequitable conduct allegations go to all the claims of the patents-in-suit and that its allegations adequately plead both materiality and specific intent on the part of the patent applicants to deceive the PTO.  Dkt. No. 153, at 2.

An inequitable conduct claim "is rarely disallowed at the pleading stage due to failure to adequately allege scienter."  *Zadro Prods., Inc. v. SDI Techs., Inc.*, Case No. 17-1406, 2019 WL 1100470, at *5 (D. Del. Mar. 8, 2019).  It is enough that the defendant plead sufficient facts from which it may be inferred that the applicant knew of withheld material information and withheld that information with the specific intent to deceive the PTO.  *Leader Techs.,* 2010 WL 2545959, at *6. \

I have examined the portions of Clarus's Second Amended Answer that relate to its inequitable conduct defense and counterclaim; based on that examination, I conclude that the lengthy and detailed allegations in that pleading are sufficient to satisfy the pleading standard applicable to the element of specific intent to deceive.  With respect to the particular individuals

who were involved in the prosecution of Lipocine's patent applications, the Second Amended Answer contains detailed factual allegations about the knowledge of those individuals regarding potentially invalidating prior art, the selective presentation of materials to the patent examiner, and the motivation of those involved in the prosecution to conceal damaging prior art references. Although the allegations include no admission of deceptive intent on Lipocine's part, such admissions are rare and are not required. *See TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1304 (Fed. Cir. 2016) ("a court 'may infer intent from indirect and circumstantial evidence' because 'direct evidence of intent is rare.'") (quoting *Therasense*, 649 F.3d at 1290); *Evonik Degussa GmbH v. Materia, Inc.*, 305 F. Supp. 3d 563, 572 (D. Del. 2018). The allegations are thus sufficient to support an inference of specific intent to deceive the PTO.

With respect to the issue of materiality, the allegations in the Second Amended Answer set forth in detail why the alleged misrepresentations and acts of concealment had the effect of inducing the patent examiner to issue a patent that otherwise would not have issued. Those allegations, which discuss in detail the prior art references that were not presented to the examiner and the allegedly misleading disclosures regarding those that were, are likewise sufficient to state a claim for relief on the materiality prong of the inequitable conduct claim.

Contrary to Lipocine's argument, the Second Amended Answer satisfies the *Exergen* requirements of pleading the "what," "where," and "how" of the alleged inequitable conduct. The "what" requirement is met by the alleged misrepresentations and failures to disclose that are recited in detail; the "where" and "how" requirements are satisfied by the recitation of the points in the prosecution at which particular prior art items were misrepresented or withheld.

I therefore conclude that there is no force to Lipocine's "futility" argument.[2]

---

[2]  In their briefs, the parties do not address the defense and counterclaim of patent misuse, which are pleaded summarily in the Second Amended Answer. Because those portions of the

For the foregoing reasons, Clarus's motion for leave to file its second amended answer and counterclaims is granted.

### B. Lipocine's Motion to Strike Clarus's Invalidity Contentions and Expert Reports

Lipocine has filed its own motion, which seeks sanctions under Rule 37(c)(1) of the Federal Rules of Civil Procedure for Clarus's delay in disclosing its intention to raise new issues in its invalidity contentions and its Second Amended Answer. Lipocine's motion is directed mainly to the inequitable conduct allegations set forth in those two documents. However, the thrust of Lipocine's motion is the same as its argument in opposition to Clarus's motion to amend—that Clarus waited too long to disclose its intention to raise inequitable conduct, and that the inequitable conduct defense and counterclaim should be removed from the case as a consequence of that delay.

#### 1. Inequitable Conduct

Although Lipocine complains about the timing of Clarus's serving of its final invalidity contentions as well as Clarus's motion to amend, there is no basis for Lipocine's complaint about the timing of the invalidity contentions. Those contentions were filed on the date set forth in the Court's scheduling order, and thus were timely.[3] Lipocine's argument is therefore necessarily

---

Second Amended Answer are not discussed by the parties, and because the allegations are derivative of the invalidity and unenforceability allegations, I will not separately address those portions of the Second Amended Answer.

[3] For that reason, Lipocine cannot properly rely on *British Telecommunications PLC v. IAC/InterActiveCorp*, Civil Action No. 18-366, 2020 WL 3047989 (D. Del. June 8, 2020). In that case, the defendant sought to amend its invalidity contentions out of time, and the court held that the defendant had not provided a sufficient justification for the untimely amendment. The same distinction applies to *TQ Delta, LLC v. ADTRAN, Inc.*, Civil Actions No. 14-954 *et al.*, 2019 WL 4346530 (D. Del. Sept. 12, 2019), cited by Lipocine. In that case, the plaintiff changed its theory of infringement after filing its final infringement contentions; sanctions were imposed because the contentions were untimely filed and no sufficient justification was given. Finally, in *Laboratory Skin Care, Inc. v. Limited Brands, Inc.*, No. 06-601, 2009 WL 2524577 (D. Del. Aug. 17, 2009), relied on by Lipocine, the district court struck the inequitable conduct theory

limited to Clarus's failure to seek to amend its answer, affirmative defenses, and counterclaims prior to the time that it did. And that issue has been addressed above in connection with Clarus's motion to amend. Lipocine has simply repackaged the arguments it made in that motion and presented them again in its motion for sanctions.[4]

Lipocine argues that Clarus acted in bad faith in waiting until after the close of fact discovery to disclose its inequitable conduct defense, and that Lipocine was prejudiced because it could not conduct discovery on that issue and did not have sufficient time to obtain expert witnesses to address the issue. The issue of adequate notice is essentially the same as the issue raised by Lipocine in the briefing on Clarus's motion to amend. As indicated above, Clarus notified Lipocine as of July 3, 2020, that it intended to raise the issue of inequitable conduct. Indeed, given the tenor of the questioning of some of Lipocine's employees during their depositions, Lipocine might well have been able to infer that a claim of inequitable conduct was in the offing. In any event, however, by early July of this year, Lipocine was clearly on notice that Clarus intended to raise that issue. As for the issue of discovery, Lipocine does not point to any particular fact discovery that it would have conducted, but was prevented from conducting because of Clarus's failure to disclose its intention to raise a claim of inequitable conduct. And

---

that the defendant raised for the first time in its motion for summary judgment. Citing *Enzo Life Sciences* with approval, the court noted that the defendant could have moved to amend its answer after the close of discovery in light of confirmatory evidence obtained at the end of fact discovery, but failed to do so. *Id.* at *3–*4. Thus, the court in *Laboratory Skin Care* endorsed the course of action that Clarus followed in this case.

[4] Lipocine structures its legal argument around the so-called *Pennypack* factors (*see Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977), which sets out five factors to be used to determine whether a failure to make timely disclosure of information required to be disclosed by court order or rule should lead to sanctions or should be regarded as harmless. Because Clarus's disclosure of its final invalidity contentions was not untimely, neither the *Pennypack* factors nor Rule 37(c)(1) is applicable here. Instead, the issue of untimeliness in this case relates to the motion to file the Second Amended Answer after the date set forth in the scheduling order for amending pleadings. And the legal rules applicable to that issue are those discussed in Part A of the discussion section, above.

that is not surprising, because, as noted above, it is ordinarily the case that the facts relevant to an inequitable conduct claim are within the possession of the patentee and persons under the patentee's control.  Lipocine has made no suggestion that it has been deprived of an opportunity to gain access to any significant witness or document as a result of the delay by Clarus in moving to amend its pleading.[5]

As for Lipocine's argument that it has had very little time to address the inequitable conduct issue in its expert reports, Clarus correctly points out that even if the inequitable conduct issue had been in the case from the outset, Lipocine's experts would not have been expected to address that issue in their opening reports.  Instead, the ordinary course would be for the plaintiff's experts to address infringement in their opening reports and to reserve any opinions on defenses and counterclaims, such as the inequitable conduct claims, for their rebuttal reports, which were not due for filing until August 14, 2020.  Thus, Lipocine had approximately six weeks from the service of Clarus's final invalidity contentions to prepare expert reports on the inequitable conduct issue if it had elected to do so.  Moreover, Lipocine argues that inequitable conduct allegations are not a proper subject for expert testimony, and that it intends to move to strike those portions of Clarus's experts' reports on that ground.  *See* Dkt. No. 147, at 3 n.2  But sauce for the goose is sauce for the gander; if it is improper for Clarus's experts to expound on inequitable conduct, the same would be true of Lipocine's experts.  And if that is so, a restraint on Lipocine's opportunity to elicit expert testimony regarding inequitable conduct would be harmless.

---

[5]   Lipocine states in passing (Dkt. No. 149, at 2) that "Clarus continues to add new theories even at the motions stage," referring to allegations in the Second Amended Answer regarding the relationship between Lipocine and Abbott Laboratories.  Those allegations, however, do not constitute a new or altered theory of inequitable conduct, but instead constitute allegations of facts that Clarus asserts support the inequitable conduct theory first set forth in its final invalidity contentions.

Although the thrust of Lipocine's motion is that Clarus waited too long to disclose its intention to raise inequitable conduct, Lipocine itself did not act expeditiously to protect its interests.  When Clarus served its final invalidity contentions on July 3, 2020, Lipocine took no action until July 15, 2020, when Lipocine called Clarus's attention to the fact that Clarus could not raise inequitable conduct without pleading it, and that inequitable conduct was not pleaded in Clarus's First Amended Answer.  Even then, Lipocine did not move to strike the inequitable conduct allegations in Clarus's final invalidity contentions until August 4, 2020, after Clarus had moved to amend its answer.  Had Lipocine moved to strike the pertinent portions of Clarus's invalidity contentions shortly after the final infringement contentions were served on July 3, 2020, the present dispute might well have been brought to a head a month earlier than it has been.  Thus, although Lipocine complains that Clarus's failure to act more promptly in this matter has resulted in prejudice, Lipocine bears at least some responsibility for the delay as well.

Finally, to the extent that Lipocine has suffered any prejudice from the delay by Clarus in formally moving for leave to file its Second Amended Answer, I have addressed that issue by granting Lipocine additional time to serve supplemental rebuttal expert reports on the issue of inequitable conduct.

### 2. Indefiniteness

On a separate point, Lipocine contends that it was improper for Clarus's expert Dr. David R. Taft to address the issue of indefiniteness in his report.  Lipocine points out that I rejected Clarus's indefiniteness argument as part of my ruling on claim construction.  The indefiniteness issue, according to Lipocine, is therefore out of the case.

Clarus's response to Lipocine's argument is not entirely clear to me.  Clarus seems to acknowledge that my claim construction order resolved the indefiniteness issue for the present.

However, Clarus appears to be contending that if I alter my claim construction, the indefiniteness issue may spring back to life and that Dr. Taft's opinion may be relevant in that event.

What is clear is that the issue of indefiniteness will not be submitted to the jury. *See W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, C.A. No. 11-515, 2015 WL 7761056, at *5 (D. Del. Dec. 2, 2015). Furthermore, no expert testimony will be taken on that issue except to the extent that expert testimony is relevant if it becomes necessary for me to conduct further claim construction in the course of the proceedings. With that understanding, it is unnecessary to strike the portions of Dr. Taft's expert report that deal with the indefiniteness issue, which is unlikely to arise anew in the course of further proceedings in this case.

For the foregoing reasons, Lipocine's motion to strike sections of Clarus's invalidity contentions and opening expert reports is denied.

IT IS SO ORDERED.

SIGNED this 18th day of August, 2020.


_____
WILLIAM C. BRYSON
UNITED STATE CIRCUIT JUDGE